## FLEMING *v.* THE PEOPLE.

In an indictment for bigamy, it is unnecessary to negative the exceptions, although they are referred to in the section defining the offence. (2 R. S., p. 687, § 8 *et seq.*) As matter of pleading, as well as proof, it lies upon the defendant to bring himself within the exceptions.

The statute (2 R. S., p. 728, § 52) cures the formal defect, if it were one, of not negativing the provisos.

General evidence that a marriage was celebrated according to the forms of the Church, or of a religious sect, implies the requisite assent of the parties. It is for the prisoner to go into particulars and negative their declaration of assent, before he can deny the apparent effect of the evidence.

THE plaintiff in error was convicted of the offence of bigamy in the Court of General Sessions of the Peace, of the city and county of New York, and was sentenced to imprisonment in a State Prison. The judgment having been affirmed in the Supreme Court, the convict procured a writ of error and brought the case here.

The indictment charged, with the requisite certainty of time and place, that the accused married one Rowena Baldwin in 1855, and that afterwards, at a day named, in 1861, he mar-

ried and took to wife, in the city of New York, one Jane A. Brett, "the said Rowena being then and there living and in full life, against the form of the statute," &c. On the trial, the defendant called the Rev. Dr. Jones, a clergyman of the Protestant Episcopal Church, who testified that on a day which he mentioned, in the year 1855, he married the defendant and Rowena Baldwin, at the house of a Mr. Perryman, in Stanton street, in New York, according to the church ceremonies, and that Mr. Perryman and fifteen or twenty persons were present. The defendant's counsel put this question to the witness: "Have you any distinct and independent recollection of anything that happened on that day?" To which he answered: "If I am asked as to the particular day of the month, I cannot, independent of my record, speak of that; but if I am asked in reference to performing a marriage ceremony between two parties, in Stanton street, in Mr. Perryman's house about that time, I can speak from recollection." The cross-examination was not further pursued.

Other witnesses on behalf of the prosecution testified that they were present at Perryman's house in November, 1855, and saw the defendant married, by the Rev. Dr. Jones, to Rowena Baldwin, on the occasion testified to by said Jones, and that the defendant and said Rowena for some time after lived together as husband and wife. None of the witnesses testified to anything that was said by the defendant or Rowena Baldwin, or by the clergyman, on that occasion, and no inquiries on that subject appear to have been made, further than has been mentioned. The prosecution examined Jane A. Brett, without objection, who swore that on the 31st December, 1861, a ceremony of marriage was performed between the defendant and herself, at No. 280 Second street, New York, by W. N. Collins, a Methodist minister, and that certain persons, whom she named, were present. She said it was a regular marriage ceremony, which was performed by the minister, and that she had a party at home. Two persons named by her as having been present, testified to the fact of the marriage, in the same general manner, and they identified

the married parties, they being present at the giving of the testimony, and they said that the place of the marriage was the clergyman's residence.

After the close of the testimony, the defendant's counsel requested the jury to be instructed, in substance, that the prosecution had not given sufficient proof of the alleged marriages, because it had not shown what language was used by the officiating clergyman and by the parties to the alleged marriage, on the occasions referred to, and, moreover, that they should be instructed that the prosecution was obliged to negative, by proof, the exceptions mentioned in the ninth section of the statute relating to bigamy. The judge refused to give the instructions asked for, or either of them, and the defendant excepted. Verdict of guilty and judgment as above stated.

*H. L. Clinton*, for the plaintiff in error.

*A. Oakey Hall* (District Attorney), for The People.

DENIO, Ch. J.   The only question upon which any doubt can be entertained in this case relates to the sufficiency of the indictment.   The statute declares, that every person having a wife living, who shall marry any other person, " except in the cases specified in the next section, shall be adjudged guilty of bigamy," &c. (2 R. S., 687, § 8.)   The next section declares, that the preceding one "shall not extend to" certain persons and cases, which are arranged in six classes.   They embrace only cases where the former husband or wife shall have been absent for five successive years, without being known to the party accused, within that time, to be living: or shall have been absent from the accused, and been continually remaining without the United States, for five years together: where the former husband and wife have been divorced for a cause other than the adultery of the accused : where a judgment of nullity of the former marriage has been pronounced : where such former marriage has been annulled for having been entered into by the accused within the age of legal consent; or where the

former husband or wife of the accused has been sentenced to imprisonment for life. The objection is, that the indictment is insufficient on account of not having negatived these exceptions.

The indictment is in the precise form in use in England; but, in the British statute, the exceptions, which are, for the most part, the same as in ours, are introduced by way of proviso, thus: "Provided always, that nothing herein contained shall extend," &c. (Arch. Crim. Pl., 592.) Although, in our act, the exceptions are enumerated in a section subsequent to the one creating the offence, they are, as we have seen, referred to in the enacting clause, and I think the effect is the same as though they had been enumerated in that clause. It is a virtual incorporation of them in the enacting clause. The distinction between a proviso, not referred to in the enacting clause, and a reference in that clause to exceptions subsequently enumerated, was incidentally considered by the judges of the Court of King's Bench, in *Steel* v. *Smith* (1 Barn. & Ald., 94). That was the case of a proviso like the one in the British bigamy act; and it was held that the pleader need not notice it. The chief justice said: "There are not, in this case, any words of reference or virtual incorporation; but this is a distinct and substantive proviso." And ABBOTT, J., said: "Here are not in the enacting clause, any words such as 'except as hereinafter provided.'" If any such words had been introduced, it might fairly have been contended that the subsequent proviso was incorporated with the enacting clause; and then the objection might have been supported." The general rule of criminal pleading is, that where there is an exception or qualification in the enacting clause of a statute, to the effect that, in certain cases or under certain circumstances, the offence is not to be considered as committed, these must be negatived in the indictment. (Arch., p. 49; *Commonwealth* v. *Maxwell*, 2 Pick., 139; *State* v. *Palmer*, 18 Verm., 570.) I am of opinion, therefore, that this indictment is formally defective. Perhaps the defect is one which, in a technical sense, would be termed substantial; but I do not think it is such, within the meaning

of the Revised Statutes upon the subject of indictments. It is there provided, that no indictment shall be deemed invalid, nor shall any trial, judgment, or other proceeding thereon, be affected by reason of any defect or imperfection in matters of form, other than those which are enumerated, which shall not tend to the prejudice of the defendant. (2 R. S., 728, § 52.) The operation of this statute upon indictments, in some respects defective, has been several times before the courts. *The People* v. *Rynders* (12 Wend., 425) was an indictment for forgery, under the statute which defined the crime to be the counterfeiting an instrument purporting to be the act of another; but that part of the description was omitted, though the instrument was set out. It was considered that the indictment was, to a certain degree, imperfect, but it was held to be cured by this statute. That case was followed by *Charles* v. *The People*, decided in this court. (1 Comst., 180.) The indictment was against the proprietors of a newspaper, for advertising tickets in an illegal lottery, but it failed to aver that the lottery was one the object of which was to dispose of money or property, though that was parcel of the statute description of the offence. The advertisement which was set out, however, showed this. The conviction was sustained on the authority of *The People* v. *Rynders*. The case of *The People* v. *Powers*, also in this court (2 Seld., 50), is much stronger. The indictment was for a second offence of petit larceny, but it failed to set out facts sufficient to show jurisdiction in the magistrates before whom the first conviction was had. This was clearly a matter of substance, according to technical rules, though it could not be pretended that the defendant was misled as to the crime of which he was accused. It was, however, considered a defect of form within the meaning of this statute, and the judgment against the prisoner was affirmed.

To show more fully the formal character of the defect in the present case, and at the same time to answer another objection taken on behalf of the plaintiff in error, it will be material to state, that the prosecution was under no necessity of giving evidence to show that the case was not within any of

the exceptions. That was matter of defence, to be made out by the prisoner, if he was able to do it. Mr. Archbold's treatise, already referred to, which, without doubt, conforms to the existing practice on criminal trials in England, lays down what evidence it is necessary for the prosecution to produce upon indictments for bigamy, and what the defendant may show in his defence. The fact of the continued absence of the former husband or wife, or a divorce dissolving the former marriage, are set down as evidence to be given by the defendant, but no allusion to the necessity of the prosecution negativing these circumstances is made. (Archb., 595.) It is, moreover, a general rule of evidence, that where the negative of an issue does not permit direct proof, or where the facts come more immediately within the knowledge of the defendant, the *onus probandi* rests upon him. The cases upon this principle are referred to in Cowen & Hill's Notes (p. 490, note 383, ed. of 1843). Among the cases are the familiar ones of a physician practicing without a license, and the selling of spirituous liquors without license. The prosecution need not prove the want of the qualification. The circumstances referred to in the 9th section of the bigamy act are highly exceptional and of rare occurrence, and rest peculiarly in the knowledge of the defendant. I think it clear, that after the prosecution has proved successive marriages of the defendant, and that the first husband or wife was living when the second marriage took place, the case of the prosecution is *prima facie* made out, and that it then lies with the defendant to show that he is protected by one or other of the exceptions. This consideration, while it disposes of the specific objection, taken on the trial, to the want of negative evidence, tends strongly to show that the defendant could not be misled by the allegations of an indictment which plainly stated all that the prosecution was bound to prove, though it did not negative the existence of circumstances which the defendant was at liberty to bring forward in his defence. Hence, I am in favor of holding the indictment sufficient.

There is no force in the position, that the prosecution was

Fleming *v.* The People.

obliged to prove the language used by the married parties and the officiating clergyman, on the occasion of the marriage ceremonies. *Prima facie* the fact of a marriage, celebrated according to the forms of a religious denomination, embraces the requisite assent of the married parties to take each other as husband and wife; and if the party, whose interest it is to dispute the marriage, is satisfied with a general statement of the ceremony, and will not inquire more particularly as to what took place, he cannot be permitted to deny the apparent effect of the evidence. I am in favor of affirming the judgment of the Supreme Court.

EMOTT, J. I do not think the case comes within the rule cited by the counsel for the plaintiff in error, either as to pleading or proof. The clause contained in the section defining the offence of bigamy, is rather in the nature of a proviso than an exception. The statute does not make the condition or the character of either party to the first or second marriage a part of the offence. It makes every second marriage, during the life of the first or second wife, a crime, but provides that the statute shall not apply to certain cases enumerated in another section, and which are cases of desertion, divorce or discharge from the marriage relation by a sentence to perpetual imprisonment. The averment and the proof to justify a second marriage in any such case are to come from the defendant. Hawkins' Criminal Law (b. 2, ch. 25, § 113) gives the rule that there is no need to allege, in an indictment, that the defendant is not within the benefit of the provisos of a statute, whereon it is founded, and this even as to those statutes which in their purview expressly take notice of the provisos, as by saying none shall do the thing prohibited, otherwise than in such special cases, &c., as are expressed in the act. So Chitty's Criminal Law (283), says it is not necessary to allege that the defendant is not within the benefit of the provisos of the statute, though the purview should expressly notice them, as by saying that none shall do the act prohibited, except in the cases thereinafter excepted. This rule is pre-

cisely applicable to this statute, and so are the cases. *South-well's Case* (Popham, 93), which both these authors cite, sustains their views. It was an indictment against a Jesuit for coming or remaining within the realm more than forty days after the end of the session of Parliament. The statute (27 Eliz.) upon which the indictment was founded forbade Jesuits coming or remaining after the specified time, otherwise than in such special cases, and upon such special occasions, and for such time only, which are expressed in the act. The report states that after deliberation taken, and consideration and conference among themselves had, by the judges, they all resolved that " the better course was to omit this in the indictment, notwith-standing it be comprised in the body of the act, in the same manner as if it had been only in a proviso; in which case it is for the prisoner to help himself, as in cases of such a proviso, if he can do it; for the words, ' other than,' &c., are but as referring to the provision subsequent in the statute, in which case this matter shall be used but as the proviso itself shall be; and according to this it hath been commonly put in prac-tice by all the justices, in all places, after the statute, until now." I am not inclined, at this day, to adopt any stricter rule of criminal pleadings than the judges of the time of Queen Elizabeth. The judgment upon this conviction should be affirmed.

DAVIES, WRIGHT, SELDEN and MARVIN, Js., agreed with EMOTT, J., that, independently of our Revised Statutes, the indictment was good at common law.

Judgment affirmed.