# Buchanan v. The State.

*Indictment for Living in Adultery or Fornication.*

1.  *Proof of marriage.*—In criminal prosecutions for adultery, marriage is a necessary ingredient of the offense, and must be proved; and while the declarations and conduct of the parties living together, holding out to the world that such relation exists between them, are competent evidence, general reputation is not.

2.  *Charge as to sufficiency of evidence.*—In a criminal case, a charge which instructs the jury, in effect, that they may convict unless they can reconcile

all the suspicious facts proved, and make them harmonize with the defendant's innocence, is erroneous.

3. *Charge on part of evidence.*—A charge requested, which, specifying one or two of the facts proved, instructs the jury that "this, in the absence of other suspicious circumstances, does not necessarily establish the crime" charged, is properly refused.

FROM the Circuit Court of Randolph.

Tried before the Hon. JOHN HENDERSON.

The indictment in this case, which was found at the February term of said court, 1876, charged that "James Buchanan, a man, and Sarah A. Holloway, a woman, did live together in a state of adultery or fornication." The defendants were jointly tried, and pleaded not guilty; and on their trial reserved the following bill of exceptions to several rulings of the court: "The State introduced William Traylor as a witness, who testified, that he was acquainted with the defendant Buchanan, and that said Buchanan, when he first knew him, was living with a woman said to be his wife. The defendant, Buchanan, objected to this evidence, on the ground that, in this case, marriage can not be proved by hearsay, or by reputation; but the court overruled the objection, and allowed the testimony to go to the jury; to which said defendant excepted. Said witness further testified, that for some time prior to the Spring term of said court, 1876, and after the woman said to be his wife had left him, said Buchanan lived in the same house with his co-defendant, Sarah A. Holloway, whom he moved to his house; that the house was a double log-house, and had separate beds in each end; that they lived in this house for about two years prior to said term of the court; that he, witness, never saw any familiar relations between them; that Mrs. Holloway has a daughter about fifteen years old, a son about thirteen, whom she usually kept hired out, and another son about six years old, who, with the daughter, remained and lived in the house with them; that said Buchanan, after said term of the court, removed into another house. of one room; that he, witness, did not know how they slept, and never saw them go to bed. To the evidence in relation to the latter house, the defendants objected, on the ground that the whole of that time was subsequent to the indictment, and therefore incompetent evidence; but the court overruled their objection, and they excepted. Said witness further testified, that he never at any time saw any acts of familiarity between them; also, that Mr. Al. Holloway, who was the son of Mrs. Sarah A. Holloway, and the son-in-law of said Buchanan, while defendants occupied the double log-house, lived in another house near by in the yard, and in the house with them a part of the time. The State then introduced said Al. Hol-

loway, who testified, that Mrs. Holloway is his mother, and said Buchanan his father-in-law; that they have been living in the same house for about two years; that he (witness) and his wife lived in the house with them about two years ago, and remained there a long time; that before his mother and said Buchanan lived in the house together, he knew a woman who was said to be Buchanan's wife; that he held her out as his wife, and she was so received and treated by the community in which they then lived. The defendants objected to this evidence in relation to said Buchanan's wife, on the ground that it is incompetent to prove a marriage in this case; but the court overruled this objection, and he excepted. The witness testified, on cross-examination, that his mother made a contract with Buchanan, about the time she went to live with him, by which she was to do his cooking and washing, and he was to pay her for it; that the defendants occupied separate sleeping apartments while he lived in the house with them, his mother occupying one end of the building, and Buchanan the other; that he never saw any acts of intimacy between them, nor any improper conduct; that while he lived near by in a separate house, he often went unexpectedly into the house occupied by them, and after they had gone to bed, and always found them in separate ends of the house; also, that his mother was a widow, that his father died about the close of the war, and that his mother had a boy child about six years old.

"This being all the evidence in the case, so far as necessary for a proper understanding of the questions reserved, the court charged the jury, among other things, as follows: 'The State insists, that the proof in this case, showing that the defendants lived in the same house; that said Buchanan's wife, if ever he had any, had left him; that the defendant Holloway was a widow, whose husband died about the close of the war; that she has not since married, and is the mother of a boy about six years old; that the defendant, Buchanan, had a married daughter living with· him in the same house, and near by most of the time—shows that any contract between the defendants, by which said Buchanan hired Mrs. Holloway, was a mere sham to cover up their real design to live in adultery or fornication. Now, gentlemen of the jury, I tell you, if you can reconcile all these facts, if proved, with the innocence of the defendants, it is your duty to do so.'

To this part of the general charge of the court the defendants excepted, and then requested the court, in writing, to charge the jury as follows: 'If the jury believe, from the evidence, that said Buchanan made a contract with Mrs. Hollo-

way to do his washing and cooking, and for that purpose moved her to his house, this, in the absence of other suspicious circumstances, does not necessarily establish the crime of adultery or fornication.' The court refused to give this charge, and the defendants excepted to its refusal."

The several rulings to which, as above stated, exceptions were reserved by the defendants, are now urged as error.

SMITH & SMITH, for the defendants.

JOHN W. A. SANFORD, Attorney-General, for the State.

STONE, J.—Adultery and fornication, while of the same grade, are essentially different offenses. To commit the former, one of the parties, at least, must be, at the time, a married person. Whether, if one of the offenders be married, and the other single, the latter commits the offense of adultery or fornication, the authorities are not in entire harmony. See *Smitherman v. State*, 27 Ala. 23 ; 2 Bish. Cr. Law, §§ 11, 12, and notes. The better opinion, however, seems to be, that, in such case, the married offender is guilty of adultery, and the unmarried one of fornication. The offense of fornication proper is committed when neither of the offending parties is married.

In prosecutions for adultery, marriage is a necessary ingredient of the offense, that must be proved. Declarations and conduct, holding out to the world that such relation does exist between parties who are living together, is competent evidence.—See *Langley v. State*, 30 Ala. 536. Reputation, or general repute, on the other hand, is not legal proof of marriage.—*Morgan v. State*, 11 Ala. 289.

2. In criminal prosecutions, as in all other jury trials, the weight and sufficiency of the evidence are questions for the jury, under appropriate instructions from the court. The measure of proof to authorize conviction, in a criminal trial, is greater than is required in civil suits. In the former, the law requires that the guilt of the accused shall be fully proved. It is not enough that the weight of evidence points to his guilt. It must do more. It must point to his guilt with such force and certainty as to exclude every reasonable hypothesis of innocence. Unless the jury are satisfied, beyond all reasonable doubt, of the guilt of the accused, it is their duty to acquit.—1 Brick. Dig. 504. We think the charge given laid down a guide for the jury, which, if followed, must have misled them. It, in effect, told them, that they might convict, unless they were able to reconcile all the facts proved, so as to show they harmonized with the inno-

[Watson v. The State.]

cence of the defendants. Under this charge, if the jury found any fact or circumstance, suspicious in its character, which was not so explained by the circumstances, or by other testimony, as to leave it consistent and in harmony with the innocence of the defendants, then they could convict. It thus cast on the defendants the duty and necessity of explaining all suspicious circumstances against them, no matter how inconclusive they may have been. Such is not the law. Circumstances may point to a party accused—may create suspicion of his guilt, and there may be no explanation of them; still they may fall far short of producing that satisfied conviction which leaves on the mind no reasonable doubt. The burden is on the State, to prove the guilt of the accused; and is not necessarily on the defendant, to explain suspicious circumstances. True, if the explanation be in his power, and he fail to offer it, this will furnish an additional ground of suspicion; but suspicion, without more, is not enough. Conviction—conviction beyond a reasonable doubt—is what the law requires.

3. The charge asked and refused was too restricted. It omitted some circumstances, which the jury may have thought suspicious. This charge was rightly refused.—*Adams v. State*, 52 Ala. 379.

The judgment of the Circuit Court is reversed, and the cause remanded. Let the defendants remain in custody, until discharged by due course of law.