ELLIS v. ELLIS.

1. **Divorce:** PRESUMPTION OF: SUBSEQUENT MARRIAGE. Where the wife had no knowledge that her husband, living apart from her and in a different locality, had married again, or was cohabiting with another woman as his wife, until after his death, and there was no evidence tending to show that she did not consider the marriage as an existing fact, and she testified that she had never procured a divorce and had no knowledge that her husband had done so, no presumption should be indulged that he had procured a divorce. The fact that the husband contracted a subsequent marriage, alone and of itself, will not create the presumption that he had procured a divorce prior thereto. The case of *Blanchard v. Lambert*, 43 Iowa, 228, explained and distinguished.

*Appeal from Linn District Court.*

TUESDAY, JUNE 13.

THE plaintiff claims she was married to Myron Ellis, deceased, in 1862; that defendant is administratrix of his estate and falsely claims to be his widow and refuses to recog. the plaintiff as such. This proceeding was commenced in probate and the relief asked is that the court decree and declare the plaintiff to be the widow of the said Myron. The defendant denied the allegations of the plaintiff's petition, and alleged she was lawfully married to said Myron Ellis in 1878, and that she is the widow of said Ellis. Trial to the court, finding and judgment for the defendant, and plaintiff appeals.

*J. B. Young*, for appellant.

*Hubbard, Clark & Dawley*, for appellee.

SEEVERS, CH. J. The plaintiff and Myron Ellis deceased were duly married in Perth, Canada, in 1862. They cohabited together as husband and wife for about three years when they separated and she went to Smith's Falls, Canada,

to her parents, and he came west. There is no evidence tending to show any cause for the separation other than a desire to change their place of residence. After leaving Canada, Myron Ellis resided for a time in Illinois and afterward in Iowa, where he died. It may be he resided for a short time at St. Joseph, Missouri.

About the year 1871 the said Myron and Jennie Meader were married in Linn county, Iowa, and they cohabited together as husband and wife until her death in about two years after marriage. In 1878 the said Myron and the defendant were married in Linn county, Iowa, and cohabited together as man and wife until his death in 1880. The plaintiff, after the separation, resided for a time in Canada, and then removed to Illinois, and has resided there and in Iowa since that time, except one or more visits to her relatives in Canada. The length of her stay on these occasions does not appear. From time to time she received letters from said Myron, the last being, we think, in September, 1868, and in which he enclosed her fifty dollars. In these letters he treated the marital relation as existing between them, and in no respect intimated he was dissatisfied with her or her conduct. In short, there is no evidence tending to show there ever was any disagreement between them. From the time he left her in Canada the plaintiff never saw the said Myron but once and that was at Council Bluffs, Iowa. The interview was brief, and he then advised her to go to her sister's at Clinton, Iowa. We are impressed there was not much evidence of affection exhibited on that occasion, nor was there any exhibition of ill feeling. Some of our conclusions are based on the evidence of the plaintiff, which we have examined with care, and see no reason to discredit her story. As to much of it she is corroborated. The material facts have been stated, and, as we understand, there is no material difference between the facts as found by us and the Circuit Court.

The only question to be determined is whether the plaint-

iff is, and should be declared to be, the widow of Myron Ellis

**1. DIVORCE: presumption of: subsequent marriage.** deceased. That she is such must, we think, be true, unless under the circumstances a presumption should be indulged that Myron Ellis had, at some time prior to his marriage to defendant, procured a divorce from the plaintiff. On this ground the Circuit Court proceeded and held such a presumption existed, and therefore found for the defendant. We are informed by counsel that the court in justification of the holding relied largely on *Blanchard v. Lambert*, 43 Iowa, 228. The ruling in that case is placed on two grounds. The first is that a presumption of innocence should be indulged, and therefore, as to the plaintiff in that case, a divorce should be presumed. There are several distinguishing features, we think, between the two cases. First. In the Blanchard case the first husband did not contest the validity of the second marriage. Second. It was reported Musgrave the first husband had married again and he lived with a woman as his wife. This the plaintiff knew and after some years contracted the marriage in ques tion. Third. After the separation of Musgrave and his wife they lived near each other or at least in the same county but did not cohabit together as husband and wife. Now it seems to us under all the circumstances of the cited case there were grounds upon which the presumption there had been a divorce could be based, and that there was a foundation on which it could rest. In the case at bar the plaintiff had no actual knowledge the said Myron had married again or was cohabiting with another woman until after his death. It cannot be said they lived near each other and refused to cohabit together as husband and wife. In this case there is no evidence tending to show the plaintiff did not at all times regard the marriage as an existing fact. Again the plaintiff testified she did not procure a divorce and had no knowledge that her husband had done so.

We are not prepared to say under the circumstances that a presumption should be indulged that Myron Ellis had pro-

curred a divorce, and thus invalidate the first marriage. It seems to us there must be some fact upon which the presumption can be legitimately founded. There must be something based on the acts and conduct of both parties, inconsistent with the continuance of the marriage relation, before the presumption should be indulged. The contract of marriage like all other contracts requires the concurrence of two persons before it can be consummated. It is fundamental that one party to a contract cannot put an end thereto. Nothing Myron Ellis alone did could put an end to the contract, nor can the fact that he contracted another marriage, alone and of itself, create a presumption that he had procured a divorce, and thus invalidate the contract of marriage with the plaintiff. Now the only thing or act done by Ellis or the plaintiff, upon which it can be claimed there should be a presumption a divorce had been obtained, is the subsequent marriages of Ellis. We feel constrained to say this is not sufficient and that the court erred in holding the defendant was the widow of Myron Ellis, and the court should have held the plaintiff was such widow.

REVERSED.