ISABEL CAROLINE GOODWIN v. CHARLES HENRY GOODWIN,.
    Appellant, AND ABIGAIL HERRICK GOODWIN, Appellant,.
    v. ISABEL CAROLINE GOODWIN.

'113  319|
e121  100|
113  319|
e129  548|
129  549|

**Deed to Homestead:** NON-JOINDER OF WIFE: *Invalid for any pur--
pose.* Where a husband conveyed a homestead occupied by
himself and his wife, and the wife did not join in the convey--
ance, the failure of the wife to join not only may be taken ad--
vantage of by her, but renders the conveyance invalid for any
purpose, by virtue of Code, section 2974, invalidating convey--
ances of homesteads not joined in by husband and wife.

JOINDER OF MISTRESS LIVING ON HOMESTEAD NOT ESSENTIAL. Under
Code, section 2974, providing that no conveyance of the home-
stead when the owner is married is valid unless the husband
and wife join in the execution of the conveyance, a conveyance
of certain property by G., without joinder of a woman with
whom he lived on the property, but who was not his lawful:
wife, was not invalid.

CONTINUANCE OF FIRST MARRIAGE: *Presumptions.* Where a man,
was married to two women the presumption of the validity of
the second marriage, in the absence of other evidence of a
divorce, would not overcome the presumption of a continuance,
of the first marriage, in a case involving property rights.

DECLARATIONS OF WIFE AS TO DIVORCE: *When no estoppel.* Where
a wife made declarations, in random conversations, that her,
husband had secured a divorce from her, and it was not shown
that they were communicated to any party interested in the,
matter or acted on by any such party, she woud not be estopped,
by such declarations to deny the divorce.

IMMATERIAL MISDESCRIPTION. That a deed conveying property de-
scribed it as being in the city of Shell Rock, instead of the,
town of Shell Rock, did not invalidate it.

*Appeal from Butler District Court.*—HON. J. F. CLYDE,.
                    Judge.

THURSDAY, FEBRUARY 7, 1901.

THE first of these actions is brought to quiet title, and the second for an apportionment of dower. The trial court rendered a decree for plaintiff in the first action, and in the second action dismissed the plaintiff's petition. The defendant in the first action and the plaintiff in the second action appeal. The cases were tried together in the lower court, and will be so considered here. Decree in first action *reversed;* in the second, *affirmed.*

*Geo. M. Craig* and *John Hemingway* for appellants.

*Geo. A. McIntyre* and *Gibson & Dawson* for appellee.

McCLAIN, J.—These cases involve three parties and four parcels of land. The parties are Isabel Caroline Goodwin, plaintiff in the first action and defendant in the second action, who claims to be the surviving widow of one J. W. Goodwin, deceased, and whom we will here designate as his second wife, though one of the questions in the case is whether she was his wife at all. The plaintiff in the second action was the first wife of said J. W. Goodwin, and also claims to be his widow, and she will be designated as the first wife. The defendant in the first action is the son of J. W. Goodwin and his first wife, and will be referred to as Charles. The parcels of land involved, as to which different rights are claimed by the different parties, are (1) certain lots in block 2 of Shell Rock, occupied during his lifetime and up to his death by J. W. Goodwin and his second wife as a home (these lots are claimed by the second wife under a conveyance from J. W. Goodwin, and are claimed by Charles under prior conveyance from the same grantee) ; (2) certain lots in block 22 of Shell Rock, claimed, respectively, by the second wife and by Charles under the same conveyances as above, but not constituting a part of the premises occupied

as a home; (3) a 30-acre tract in the southwest ¼ of the southwest ¼ of section 12, township 91, range 15, in Butler county, claimed by the second wife under conveyance from J. W. Goodwin, but in which Charles claims an interest by inheritance from his father; and (4) a 36-acre tract in the northwest ¼ of the southwest ¼ of the same section, also claimed by the second wife under conveyance from J. W. Goodwin, but in which Charles claims no interest. The first wife asserts and seeks to have set off a dower right in all four of these parcels. The first action was brought by the second wife against Charles to quiet title in the three tracts to which he makes some claim, and the second action is brought by the first wife against the second wife to have a dower interest apportioned.

The issues involved, so far as can be made out from the pleadings, evidence, and argument of counsel, are the validity of the conveyance to the second wife from J. W. Goodwin of the two parcels of lots and of the 30-acre tract; the validity of the conveyance as to the 30-acre tract being questioned on the ground that it was procured by fraud and undue influence, and the conveyance as to the two parcels of lots being contested on the same ground, and also on the ground that J. W. Goodwin had already conveyed these parcels to Charles. The second wife contests the conveyance to Charles as being invalid for fraud and want of consideration, and also invalid with reference to the parcel of lots in block 2, because these lots constituted the homestead of J. W. Goodwin and the second wief at the time the conveyance to Charles was made, and the second wife did not join therein. Evidence was also introduced by plaintiff in the first action intended undoubtedly to show a trust in her favor in the two parcels of lots conveyed to Charles antedating such conveyance, and in connection with this claim it is contended that the conveyance to him was without consideration. The claim of Charles

of an interest in the 30-acre tract as heir is based on the contention that the conveyance of that tract, as well as the conveyance of the parcels of lots to the second wife, was never executed by J. W. Goodwin, and therefore that Charles, as one of his heirs, is entitled to a share in that tract. The first wife claims that she continued the only lawful wife of J. W. Goodwin until his death, and is entitled to dower interest in all the property which he conveyed to the second wife. The second wife, however, produces a quitclaim deed to this property from the first wife, which is, in turn, assailed as having been procured by fraud.

It must not be assumed that all these issues are raised in the pleadings. Many of them have no basis on any sufficient allegation of facts, but evidence relating to all of them was tumbled into the record without objection, so far as appears, and all of them are argued on one side or the other by counsel in presenting the case to this court. Now, while it is by the constitution and statutes made the duty of this court on appeal to try equity cases *de novo,* we have not supposed that it was the intention that we should act primarily as a trial court, even in such cases. If, however, parties see fit to make the trial court merely the conduit through which to pour into this court every possible question that can arise in a case, without securing any ruling thereon from the trial judge, we insist that it is not our duty to do more than a trial court is bound to do, and this is to render a decision as to the rights of the parties. This court is manifestly at a disadvantage in acting as a trial court. It cannot very well disregard evidence which is wholly incompetent and immaterial under the pleadings, but raises entirely new issues, because the parties may perhaps insist that, by failure to raise the question that the issues are not involved in the pleadings, such objection has been waived, and all the issues presented by the evidence must be tried. This clearly puts the party who is seeking to present his case in accordance with the issues presented by the pleadings as a disad-

vantage.   If, instead of securing rulings of the trial judge
on the questions of law and fact involved, the parties see fit
to come to this court for a primary adjudication on these
various questions, they cannot expect us also to exercise the
functions of an appellate court, and discuss on the authori-
ties all the questions which may possibly in any way be
raised in the case, and we shall content ourselves with stat-
ing our conclusions on the questions which are presented to
us.

One of the controversies which is at the bottom of the
difficulties in both of these cases is whether the so-called sec-
ond wife was lawfully married to J. W. Goodwin.   The
validity of the marriage to the first wife is not questioned,
but, in order to support the second marriage, it is contended
that there was a divorce from the first wife.   No decree of
divorce is proven, and it is conceded that there is no record
of any such divorce in the county in Wisconsin where the
first wife and J. W. Goodwin last lived together, and where
she has continued to reside ever since he left her.   It
is sought to establish such divorce by admissions of
the first wife, by proof of declarations made by J. W.
Goodwin before his death, in May, 1896, and by the pre-
sumption in favor of the second marriage in Iowa, which
is conceded to have been regular in form.   With reference to
the admissions of the first wife, all that can be said is that
she seems to have supposed for a time that a divorce had
been procured, although she at no time claims to have been
a party to any proceeding to that end, nor to have been
served with notice of any such proceeding.   Perhaps she was
not greatly concerned as to whether her husband had pro-
cured a divorce or not, inasmuch as, after leaving her, his
only communication with her seems to have been in connec-
tion with procuring from her a sum of money.   At any rate,
the mere understanding on the part of the first wife that her
husband had secured a divorce would not establish that fact,
nor would she be estopped by her declarations made in ran-

dom conversation, not, so far as is shown, communicated to any party interested in the matter, nor acted upon by any such party. The mere presumption arising from the subsequent marriage might be good enough evidence in some cases, but certainly will not be sufficient to overthrow the presumption of the continuing validity of the first marriage, in the absence of any other evidence of a divorce, and in a case involving property rights. We find, therefore, that the first wife continued to be the lawful wife of J. W. Goodwin until his death.

The invalidity of the second marriage has a bearing upon the claim made by the second wife that the conveyance to Charles of the lots in block 2 was void because it was a conveyance of J. W. Goodwin's homestead in which his wife did not join. On this point it appears to be contended that a man may, by occupying premises as a home, in conjunction with a woman who is not his lawful wife, make such premises his homestead in such sense that he cannot convey them without her joinder in the deed. The question of the exemption of the homestead from execution is not here involved. The provision of the statute is that no conveyance of the homestead, if the owner is married, is valid unless the husband and wife join in the execution of the same joint instrument. Code, section 2974. It is the joinder of the wife which is required, and, as the so-called second wife was not a wife at all, the omission of her joining in the deed would not render it invalid. No question is raised as to the necessity of joinder by the first wife. Counsel contend that the failure of the wife to join can only be taken advantage of in behalf of the wife; but that is not the law. A conveyance of a homestead occupied by husband and wife, in which the wife does not join, is invalid for any purpose. We find that the conveyance to Charles of the two parcels of lots was valid in this respect. The other objections to the conveyance to Charles appear to be without substantial merit. The evidence introduced

to show a trust in behalf of the second wife in the property acquired by J. W. Goodwin is too indefinite to justify us in giving it any weight. With reference to the contention that the conveyance to Charles is invalid because the premises are described as being in the city of Shell Rock instead of the town of Shell Rock, it is, in our opinion, not entitled to any consideration whatever. The title of Charles to the two parcels of lots is confirmed.

On the other hand, the conveyance from J. W. Goodwin to the second wife, covering the 30-acre tract, is not successfully impeached, and we sustain it, and therefore deny to Charles any interest therein by way of inheritance.

Finally, we have the question as to whether the first wife is entitled to dower in the property conveyed by J. W. Goodwin to his second wife. This question involves all four of the parcels of property hereinbefore referred to. Aside from the question whether the first marriage was ever dissolved by divorce, which we have already considered, there is involved here a pretended quitclaim deed by the first wife to the second wife, dated April 23, 1896—that is, about a month before the death of J. W. Goodwin—conveying to the second wife, in consideration of five dollars, all the premises in controversy in this suit. It is contended in behalf of the first wife that this quitclaim was procured from her by fraud. Without discussing the evidence, it is sufficient to say that we do not find such evidence of fraud as to warrant us in disregarding this deed, and we therefore hold that the first wife is not entitled to the relief asked in her action. The result must be that the decree in the first case in favor of Isabel Caroline Goodwin is REVERSED, and the decree in her favor in the second case is AFFIRMED.