**FUQUAY v. STATE.    (5 Div. 983.)**

Supreme Court of Alabama.    June 18, 1927.

**1. Marriage ⊜⇒13—Common-law marriage is sanctioned in this state.**

The common-law marriage has long been sanctioned in this state.

**2. Bigamy ⊜⇒1—Offense of bigamy may be predicated on common-law marriage.**

The offense of bigamy may be predicated on common-law marriage, where the fact is shown by the required measure of proof.

**3. Bigamy ⊜⇒7—Burden is on state in bigamy case to prove valid prior marriage and defendant's second marriage while spouse was living.**

In a charge for bigamy on account of common-law marriage, the burden is on the state to prove beyond a reasonable doubt the existence of a subsisting, valid, prior marriage, and that the second marriage was contracted by the defendant while the lawful spouse of the former marriage was living.

⊜⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**4. Bigamy ⬗➡11—State, in prosecution for bigamy, is not required to prove that prior, valid marriage had not been dissolved.**

In a prosecution for bigamy, the state, after proving the first and second marriages, is not required to prove the negative, that the prior marriage had not been dissolved.

**5. Bigamy ⬗➡1—In prosecution for bigamy, first marriage may be proved by evidence of cohabitation and defendant's declarations without proof of record or ceremonial marriage.**

In prosecution for bigamy, of which a second marriage is an ingredient, the first marriage may be proved by evidence of cohabitation and defendant's declarations or confessions, without proof of record of former marriage, or testimony of one who witnessed ceremony.

**6. Bigamy ⬗➡11—Continuance of life of party to marriage and dissolution of marriage are matters of fact to be determined on evidence and inferences therefrom.**

There are no absolute presumptions against the continuance of the life of one party to a marriage or of the dissolution of the first marriage in order to establish the innocence of the other party to a subsequent marriage, but in each case the question is one of fact, to be determined, as any other question, on a consideration of the facts and inferences therefrom.

### Certiorari to Court of Appeals.

R. H., alias Robert, Fuquay was convicted of bigamy, and appealed to the Court of Appeals, and the judgment of conviction being there reversed, the State, by its Attorney General, brings this petition for certiorari to the Court of Appeals to review and revise the judgment and decision of that court in Fuquay v. State, 114 So. 892. Writ awarded; reversed and remanded.

See, also, post, p. 79, 114 So. 903.

Charge 13, refused to defendant, is as follows:

"The court instructs you, gentlemen of the jury, that, when two successive marriages are shown to have been consummated by the same person, the law presumes that the second or latter marriage is legal until it is shown by the evidence, beyond all reasonable doubt, that it is illegal."

Charlie C. McCall, Atty. Gen., and W. M. Rayburn, Asst. Atty. Gen., for the State.

The presumption of the former marriage is one of fact and not of law, and for the determination of the jury. Williams v. State, 151 Ala. 108, 44 So. 57. Alabama recognizes a common-law marriage. White v. Hill, 176 Ala. 480, 58 So. 444; Wall v. Williams, 11 Ala. 826; Beggs v. State, 55 Ala. 108. A charge of bigamy may be predicated upon a common-law marriage. People v. Mendenhall, 119 Mich. 404, 78 N. W. 325, 75 Am. St. Rep. 408; Bishop St. Crimes, § 592; 7 C. J. 1170. The burden of proof as to the validity of a former marriage differs in civil and criminal cases. Bennett v. State, 100 Miss. 684, 56 So. 777. In prosecution for bigamy, the former marriage may be established by circumstantial evidence. Murphy v. State, 122 Ga. 149, 50 S. E. 48; Lowery v. People, 172 Ill. 466, 50 N. E. 165, 64 Am. St. Rep. 50; Apkins v. Com., 148 Ky. 662, 147 S. W. 376; State v. Swartz, 18 Ohio Cir. Ct. R. 892; Oliver v. State, 7 Ga. App. 695, 67 S. E. 886; State v. Sherwood, 68 Vt. 414, 35 A. 352; Langtry v. State, 30 Ala. 537; Williams v. State, 54 Ala. 133, 25 Am. Rep. 665; Buchanan v. State, 55 Ala. 154.

Horace C. Wilkinson, of Birmingham, opposed.

Brief did not reach the Reporter.

THOMAS, J. We have carefully examined the respective opinions rendered in the Court of Appeals, and are in accord with the views expressed and result announced by Judge Samford.

[1, 2] The common-law marriage has long been sanctioned in this state (Wall v. Williams, 11 Ala. 826; Beggs v. State, 55 Ala. 108; White v. Hill, 176 Ala. 480, 58 So. 444), and that, where the fact of such a marriage is shown by the required measure of proof, the offense of bigamy may be predicated thereon.

[3, 4] In such a charge the burden is upon the state to establish the corpus delicti. That is, to prove beyond a reasonable doubt (1) that there was a subsisting valid prior marriage entered into by the defendant; and (2) that a second marriage had been contracted by that defendant while the lawful spouse of the former marriage was living. Parker v. State, 77 Ala. 47, 54 Am. Rep. 43; Buchanan v. State, 55 Ala. 154. This measure of proof is required to overcome the presumption of innocence that attends a defendant on trial for crime. Parker v. State, supra; 40 C. J. p. 1170, § 40. Thus is established a prima facie case (Bennett v. State, 100 Miss. 684, 56 So. 777), and the state is not required to prove the negative—that the prior marriage had not been dissolved—facts peculiarly within the "cognizance of a defendant prosecuted for bigamy" (Bennett v. State, 100 Miss. 684, 56 So. 777; Goad v. State, 51 Tex. Cr. R. 393, 102 S. W. 121; 7 C. J. p. 1170, § 40).

This court has held in bigamy cases that:

"Marriage may be contracted in this state, without ceremony or solemnization, by the consent of the parties, followed by cohabitation. Campbell's Adm'r v. Gullatt, 43 Ala. 57; Beggs v. State, 55 Ala. 108; Farley v. Farley, 94 Ala. 501, 10 So. 646 [33 Am. St. Rep. 141]. The defendant offered evidence tending to show that, after the decree of divorce, he and his former wife, in the presence of witnesses, agreed to 'let the past be the past, and from that time on they would again live together as

⬗➡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

man and wife,' and that from that time to the time of the trial they had lived together as husband and wife. These facts, if the evidence was believed, constituted a valid marriage at common law. Whether the *facts offered to be proved really existed*, and *whether, if there was such an agreement, consummated as stated, it was made in good faith, or merely as a cloak to hide illicit relations*, were questions for the jury." (Italics supplied.) Mickle v. State, 21 So. 66.

[5] That is to say, in a criminal offense, of which a second marriage is an ingredient, and where the legal presumption of innocence of the accused contracting the second marriage is indulged, the first marriage may be proved by evidence of former cohabitation with a third person and defendant's declarations or confessions. Langtry v. State, 30 Ala. 537; Williams v. State, 54 Ala. 133, 25 Am. Rep. 665; Buchanan v. State, 55 Ala. 154; Moore v. Heineke, 119 Ala. 627, 24 So. 374. If this evidence is "full and satisfactory," the prosecution is not required to produce either the record of the former marriage or the testimony of some person who witnessed the ceremony, for, by the common law, consent followed by cohabitation constitute a valid marriage (Williams v. State, 54 Ala. 131, 135, 137, 25 Am. Rep. 665; Langtry v. State, 30 Ala. 536); or, on the other hand, the jury may infer from such facts an actual ceremonial marriage (Bynon v. State, 117 Ala. 80, 23 So. 640, 67 Am. St. Rep. 163; Parker v. State, 77 Ala. 47, 54 Am. Rep. 43; Reid v. State, 168 Ala. 118, 53 So. 254).

In civil cases the one attacking the validity of a second marriage on the ground of a subsisting former marriage has the burden of proving that the original or prior marriage has not been dissolved by death or by law. That application of the rule will not be made in a prosecution for bigamy or adultery. Bennett v. State, 100 Miss. 684, 56 So. 777; Fletcher v. State, 169 Ind. 77, 81 N. E. 1083, 124 Am. St. Rep. 219; Pittinger v. Pittinger, 28 Colo. 308, 64 P. 195, 89 Am. St. Rep. 200. The reason for the distinction is that "public policy, social convenience and safety often justify a resort to certain presumptions"; as, for example, that "of the validity of a marriage duly solemnized indulged in collateral proceedings of a civil nature involving private rights." Teter v. Teter, 101 Ind. 129, 51 Am. Rep. 742; Boulden v. McIntire, 119 Ind. 574, 21 N. E. 445, 12 Am. St. Rep. 453; Wenning v. Teeple, 144 Ind. 189, 41 N. E. 600; 32 A. L. R. 1118, note; 34 A. L. R. 465, note, 483, note. And in such collateral inquiries involving private rights, as the disaffirmance of marriage, compensation cases, that of legitimacy as affecting necessary parties to a suit, or parties in interest to contests of wills, were our decisions of Weatherford v. Weatherford, 20 Ala. 548, 556, 557, 56 Am. Dec. 206; Thompson v. Thompson, 91 Ala. 591, 8 So. 419, 11 L. R. A. 443; Mc-

Laughlin v. McLaughlin, 201 Ala. 482, 78 So. 388; Young v. Woodward Iron Co., 211 Ala. 508, 101 So. 51; Moore v. Heineke, 119 Ala. 627, 24 So. 374; Williams v. Wilson, 210 Ala. 289, 97 So. 911. To those cases we will later advert. That is to say, the rule applied in civil cases that, in attacking the validity of a marriage ceremony on the ground of a former marriage, the burden of proof is upon the attacking party to show that it did not exist or continue, or that there was no divorce from the first wife, does not apply in prosecutions for bigamy. 7 C. J. p. 1170, § 40; 3 R. C. L. § 24, p. 807; Industrial Commission of Ohio v. Dell, 104 Ohio St. 389, 135 N. E. 669, 34 A. L. R. 422, et seq.; L. R. A. 1916F, 819; 34 A. L. R. 494; Parker v. State, 77 Ala. 47, 54 Am. Rep. 43; Buchanan v. State, 55 Ala. 154; Ake v. State, 6 Tex. App. 419, 32 Am. Rep. 586.

In the criminal charge of bigamy (Fletcher v. State, 169 Ind. 77, 81 N. E. 1083, 124 Am. St. Rep. 220) it is declared:

"There is no occasion for resorting to presumptions, and we find no authority to sustain the doctrine for which appellant contends. In such case the accused has opportunities, above all others, of knowing whether a divorce has been granted, and if so, where proof of the fact may be obtained. Public policy and convenience do not require the state, in this class of cases, to search all records extant for proof of a negative fact peculiarly within the knowledge of the defendant; but, when the state shows that the accused has been married to a woman who was still living at the time of his second marriage to another, it is incumbent upon him to show a divorce from such former wife. State v. Barrow (1879) 31 La. Ann. 691; Commonwealth v. Boyer (1863) 7 Allen [Mass.] 306; 4 Elliott, on Evidence, § 2873; 3 Greenleaf, Evidence (16th Ed.) § 208; Fleming v. People (1863) 27 N. Y. 329; Hull v. State (1880) 7 Tex. Ct. App. [Tex. App.] 593; May v. State (1878) 4 Tex. Ct. App. [Tex. App.] 424."

In Bennett v. State, 100 Miss. 684, 697, 698, 699, 703, 704, 56 So. 777, 779, the charge was bigamy, and the above quotation from Fletcher v. State, supra, is approved, and the further declaration is made as follows:

"The onus of proof is on him to show, as a matter of defense, that he had been divorced by competent authority at the time of his second marriage, or that his former marriage had been declared void by competent authority. Such, in substance, was the holding of the court in the case of State v. Barrow, 31 La. Ann. 691. See 1 Bishop on Marriage, Divorce and Separation, § 1149. Mr. Underhill, in his most excellent work on Criminal Evidence (2d Ed.) § 405, announces the same principle: 'A marriage, shown to have been solemnized, will be presumed to be valid until its invalidity is shown. The rule that, when a marriage has been consummated, it will be presumed that the former marriage of one of the parties has been legally dissolved, does not apply in a prosecution for bigamy; so, where the state has shown that the accused has been married to a woman who was

still living at the time of his second marriage to another, the burden was on him to show that his former marriage had been legally dissolved.' "

The Chief Justice Mayes states the rule respectively applicable as follows:

"When the fact of whether or not a man or woman is a bigamist is incidentally involved in the pursuit of property rights by different persons claiming matrimonial relations with him or her, the guilty person being dead and having nothing at stake, the law is that the person who seeks to profit by proof of the unlawful relation must establish it by the clearest proof. Such person, in this character of litigation, cannot establish the bigamous marriage by mere proof of a valid first marriage with the first husband or wife living at the date of the second marriage. Such facts must be followed by satisfactory and convincing proof that there had been no divorce from the first marriage before the second was contracted, or the law steps in and presumes the validity of the second marriage. But when the man or woman is before the court on a direct charge of bigamy, when the proof of bigamy is not merely incidental to the accomplishment of some other desired end, the same proof which the law allows to stand as a shield to protect and save innocence is allowed to condemn and punish the guilty. This rule of law has its foundation in charity, that virtue which is pronounced by the Good Book to be the best of all virtues. The foundation of this rule of the law grows out of the fact that it has greater regard for name and character than it has for mere property rights. * * *

"The other cases cited by counsel for appellant are Hull v. Rawls, 27 Miss. 471; Spears v. Burton, 31 Miss. 554; Wilkie v. Collins, 48 Miss. 496; Railway v. Beardsley, 79 Miss. 417, 30 So. 660, and K. of P. v. Tucker, 92 Miss. 505, 46 So. 51. All of the above cases involved a civil litigation between innocent parties; the wrongdoer himself having no sort of interest involved. The above cases were decided as they should have been in each instance, and the rule of law announced by them is not interfered with by the holding of the court in this case, and is not intended to be."

The discussion is closed with the following observation:

"Since the rule of law is a rule for the protection of innocence, where the guilty party has no interest involved and is beyond the reach of human laws, it can have no application to him when he is before the court with an interest, and when the state is undertaking to bring him to punishment for the outrage he has committed against society and the law of the land." 7 C. J. 1170–1.

This well-founded distinction relieves the present criminal prosecution for bigamy from that obtaining where the rights of third parties merely were involved. As in Young v. Woodward Iron Co., 211 Ala. 508, 101 So. 51, the alleged wife sought compensation under the provisions of the statute (Gen. Acts 1919, p. 206), and defendant employer denied said relationship and right to compensation on grounds that deceased was legally married to another, "and had never been divorced from her, she still surviving"; hence the application of the civil rule on the negative testimony by the alleged former wife. She had testified:

"I don't know anything about any divorce against any of my husbands. I don't know of any divorce proceedings by me or by any of my husbands."

Under such evidence was the discussion of prima facie presumptions and shifting the burden of proof or of the "initial presumption of validity" and its refutation, or that it had not been evidentially disputed." Mr. Justice Somerville quotes from the notes to Pittinger v. Pittinger, 28 Colo. 308, 64 P. 195, 89 Am. St. Rep. 193, where the suit for the proceeds of insurance policies was between a niece and alleged wife as beneficiaries.

And in McLaughlin v. McLaughlin, 201 Ala. 482, 78 So. 388, the suit was for annulment of marriage between parties, solemnized in 1914. The same parties had intermarried in 1904, and in 1908 the husband obtained a divorce on grounds to be stated. The wife had in 1907 gone to Georgia without divorce, was there led to believe by one Moore that they could marry in that state without more, did so, and lived together in Georgia for two years, then removed to Alabama, where she lived with Moore until 1913, and separated without divorce. The Moores were known in both states as husband and wife, and to that relation were born two children. The connection thus established between the Moores was held to be "adulterous and unlawful"; that "the presumption is in favor of the validity of the last marriage" as against the wife's intention in respect of her relation with Moore, which "rests in inference"; that "by her second marriage with appellant [McLaughlin] appellee destroyed the evidential value of her previous relation with Moore."

In Williams v. Wilson, 210 Ala. 289, 97 So. 911, the suit was for redemption of lands from mortgage foreclosure by Charlie Williams against Wilson and others claiming by purchase. There was no record evidence of Racheal and McSmith. It was "an open public marriage." The family relation continued for about 20 years, and the issue of this marriage (Alice Smith, the mother of complainant) held sustained by "the presumptions of her legitimacy."

The case of Moore v. Heineke, 119 Ala. 627, 636, 637, 24 So. 374, 378, was an application to probate a will of Miss Gleason and contested by a sister as next of kin on the ground of fraud and undue influence on the part of Mr. Gleason representing himself as husband of testatrix. Mr. Chief Justice Brickell declared:

"It is conceded by counsel for appellant that on an issue of marriage vel non, evidence of

cohabitation and general, uniform reputation, and of the declarations and conduct of the parties while living together, holding themselves out to the world as man and wife, is admissible, and that these facts raise a prima facie presumption of marriage, which will prevail until overcome by evidence or neutralized by counter presumptions. * * * The weight of authority and the decisions of this court support the proposition that the presumption of an actual marriage from the fact of continued cohabitation, etc., is rebutted by the fact ,of a subsequent permanent separation, without apparent cause, and the actual marriage soon after of one of the parties. Weatherford v. Weatherford, 20 Ala. 548 [56 Am. Dec. 206]; Bish. Mar. & Div. § 446. But we cannot sustain the proposition that, because the presumption arising from such facts is rebutted, the evidence of these facts is no longer entitled to any consideration, and must be withdrawn from the jury. Notwithstanding such evidence has been deprived of any aid from the presumption, it is still evidence tending to show, and from which the jury may infer, if it be sufficiently strong and satisfactory, either an actual ceremonial marriage or an actual consent or agreement to be man and wife, which when followed by cohabitation may constitute a valid common-law marriage. While cohabitation and repute do not . make marriage, and there can be no marriage without the mutual consent of the parties, yet cohabitation as man and wife, the rearing of children, the recognition of the relation by the parties themselves and by their friends and relatives, and their declarations and conduct, holding themselves out to the world as husband and wife, are manifestations of the parties having consented to contract that relation inter se, and, therefore, circumstances from which the trior of the fact may infer that a marriage had in fact been entered into. This court has many times held that in criminal prosecutions for bigamy—an offense of which an actual second marriage is an essential ingredient, and where every legal presumption of the innocence of the accused in contracting the second marriage is indulged—the first marriage may be proved by evidence of the former cohabitation of the accused with a third person, and of his declarations. Langtry v. State, 30 Ala. 537; Williams v. State, 54 Ala. 133 [25 Am. Rep. 665]; Buchanan v. State, 55 Ala. 154.

"The declarations and conduct of the cohabiting parties, while living together, are admissible as of the res gestæ."

Judge Freeman's notes cover (89 Am. St. Rep. p. 198) the whole range of the decisions on this subject—the general rule or presumption is stated from the civil case as follows:

"Every intendment of the law favors matrimony. As is often said, the law presumes morality, ,not immorality; marriage, not concubinage; legitimacy, not bastardy. When a marriage in fact has been shown, the law raises a presumption that it is valid and casts the burden on him who questions it to establish its invalidity. This is a presumption of more than ordinary strength. It is one of the strongest·known to the ·law: Jones v. Gilbert, 135 Ill. 27, 25 N. E. 566; State v. Worthingham, 23 Minn. 528; Johnson v. Johnson, 30 Mo. 72, 77 ·Am. Dec. 598; Hynes v. McDermott, 91 N. Y.·451, 43 Am. Rep. 677; In re

Estate of Megginson, 21 Or. 387, 28 P. 388, 14 L. R. A. 540; Piers v. Piers, 2 H. L. Cas. 331. When a marriage is consummated, it is not presumed that there were legal impediments such as a former marriage of either of the parties; and if such a marriage is shown to have existed, it will often be presumed to have been dissolved or terminated prior to the second marriage."

That the former spouse is presumed to be dead after seven years from date last·heard from; that the first marriage has been dissolved by divorce, and the burden of proving such a negative is on him who asserts to the contrary, citing only civil cases, 89 Am. St. Rep. 199, 200; and, under evidence to overcome the presumption, says that a person attacking a marriage on the ground that a former spouse of one of the parties is living may introduce evidence affording reasonable grounds for presuming the allegation true, · citing civil cases; and he concluded on the authority of Ellis v. Ellis, 58 Iowa, 720, 13 N. W. 65, saying:

"* * * If a wife has no knowledge that her husband, who has left her, had again married until his death, and there was no evidence that she did not consider the marriage as existing, and she testified that she had never procured a divorce and had no knowledge that her husband had done so, no presumption should be indulged that he had procured a divorce. Ellis v. Ellis, 58 Iowa, 720, 13 N. W. 65."

His note to subsection E on the subject of "Evidence in Bigamy Cases" was:

"In a prosecution for bigamy, if the defendant relies upon a divorce as justifying his second marriage, it is incumbent on him to prove it. The state is not required to prove that he has not been divorced from his first wife. Commonwealth v. Boyer, 7 Allen [Mass.] 306; Hanley v. State, 12 Ohio Cir. Ct. R. 584[5] O. C. D. 488."

In his limitations on the presumption he says it does not apply in favor of the second marriage if in·contravention of law; that, if one seeks to uphold the second marriage on the ground of divorce, that person is required to show such divorce (Wilson v. Allen, 108 Ga. 275, 33 S. E. 975); that the presumption does not obtain of a divorce when the time between deserting of the first wife and contracting of second marriage is only three years, and the records of the only court in which a .divorce could have been lawfully procured are easily accessible (Cartwright v. McGown, 121 Ill. 388, 12 N. E. 737, 2 Am. St. Rep. 105); that the rule declared in Iowa was "that the mere presumption arising from the subsequent marriage might be good enough evidence in some cases, but certainly will not be sufficient to overthrow the presumption of the continuing validity of the, first marriage, in the absence of any other evidence [it appeared that the first wife had made declarations in random conversation

that her husband had secured a divorce, which were not shown to have been communicated to any party interested in the matter nor acted upon by such party] of a divorce, and in a case involving property rights" (Goodwin v. Goodwin, 113 Iowa, 319, 85 N. W. 31).

In notes (b), (c), and (d) of "Limitations on this Presumption" it is declared (89 Am. St. Rep. pp. 202, 203, 204):

"*Both Spouses must Act Inconsistently with Marriage.*—It has been held that there must be something based on the acts and conduct of both parties to the former marriage inconsistent with the continuance of such marriage before a presumption of its dissolution by divorce will be presumed. Under this rule, when the parties to a second marriage live in the locality where the first wife resides, and the two wives mingle socially without protest or comment on the part of the first, the presumption should be indulged. Leach v. Hall, 95 Iowa, 611, 64 N. W. 790. And so it will be when both parties to a marriage contract subsequent marriages. Blanchard v. Lambert, 43 Iowa, 228, 22 Am. Rep. 245. But although they both remarry, if the records of the counties in which they have lived show no divorce, and there is no proof that the husband lived with his second wife, a divorce is not presumed for the woman. Barnes v. Barnes, 90 Iowa, 282, 57 N. W. 851. No presumption, according to this rule, can arise against a wife from the subsequent marriage of her husband alone. Gilman v. Sheets, 78 Iowa, 499, 43 N. W. 299. * * *

"We are not certain that any decided case has gone the length of indulging a presumption of divorce in favor of a married person who has abandoned his or her spouse and gone to another commonwealth or country, in order to justify a second marriage of such absentee. * * *

"To our mind, the vice of the principal case and of others like Alabama, etc., Ry. Co. v. Beardsley, 79 Miss. 417, post, page 660, 30 So. 660 [89 Am. St. Rep. 660] is that they not only make a bigamous marriage apparently valid, but point out no means by which its invalid or unlawful character may be established. Even if it be true, * * * that the presumption of the validity of the second marriage still prevails, though the spouse who is not a party to it does not know of any proceedings for a divorce, how can the negative, of want of divorce, be proved? Such divorce might have been granted by the courts of any state or country in which the person contracting the second marriage might at any time, after contracting it, have been a resident, and such being the case, we do not understand how the absence of a divorce can be established except by evidence showing all the states and countries in which he has so resided, and that none of the courts of any of them competent to grant him a divorce had in fact done so. To do this, a search must be made of the records of all these courts, and some competent evidence adduced that none of them had undertaken to dissolve the first marriage. The production of all this evidence must ordinarily be impracticable, if not impossible, and the final result seems to be that these decisions, if followed to their logical conclusion, create presumptions, in the attempt to support marriages, which are potent to overthrow a moral and valid marriage to the end that an immoral and bigamous relation may be rendered unassailable, at least in any civil action.

"*Whether Rule Differs in Criminal Cases.*— In the application of these presumptions, there can be little, if any, difference between civil and criminal cases. It is true that a jury may be more ready to draw an inference of the continued existence of a former marriage in a civil than in a criminal proceeding, yet it cannot be that the rules of evidence in each case so differ as that there should be a legal presumption in one case and none in the other. In re Phene's Trust, L. R. 5 Ch. App. 139, 151."

[6] The cases in this country and in England are to the effect that there are no "absolute presumptions against the continuance of the life of one party to a marriage," or of the dissolution of the first marriage state, "in order to establish the innocence of the other party to a subsequent marriage." In each case the question is one of fact, "to be determined like any other question of fact, upon a consideration of the attending facts and circumstances, and such inferences as fairly and reasonably flow therefrom." That there was no inflexible rule or presumption in such cases is shown by the English cases: King v. Twyning, 2 Barn. & Ald. 386; Rex v. Harborne, 2 Adol. & E. 540; Queen v. Lumley, L. R. 1 C. C. 196; Nepean v. Knight, 2 Mees. & W. 894; In re Phene's Trusts, L. R. 5 Ch. App. 139, 150. The English rule is thus stated in Queen v. Lumley, L. R. 1 C. C. 196, saying:

"'In an indictment for bigamy,' said Lush, J., 'it is incumbent on the prosecution to prove to the satisfaction of the jury that the husband or wife, as the case may be, was alive at the date of the second marriage. That is purely a question of fact.'"

Judge Freeman concludes the important question, after reviewing the decisions, as follows (89 Am. St. Rep. p. 206):

"There is no unbending presumption in favor of a second marriage or of the innocence of the parties, but, on the contrary, that the decision of any particular case must rest on its own attending facts and circumstances. Moreover, it is believed that little force should be given this artificial presumption in order to meet the exigencies of a given case. There appears no intimation in the English cases, so far as they have come under our observation, that the dissolution of a former marriage by divorce will be presumed in favor of the validity of a second marriage or of the innocence of the parties to it, although some of the earlier ones have been cited in this country as authority for that proposition. Nevertheless, the authorities affirming this doctrine are numerous, as has already been shown, and it may be considered as settled that such a presumption, in a proper case, may be indulged. However, the presumption of the dissolution of a prior marriage, whether by death or divorce, should

be indulged with caution. We apprehend that such presumptions sometimes have been made with very little justification. A rule of law which allows an artificial or technical force to be given evidence, which warrants such presumptions, beyond its natural tendency to convince the mind, and requires courts and juries to presume as true that which probably is false, cannot but be fraught with dangerous consequences. In case there is a conflict of presumptions, it would appear more reasonable that that one should yield which' has the least probability to sustain it, rather than that the one in favor of innocence and of the validity of the subsequent marriage should prevail. See Clayton v. Wardell, 4 N. Y. 230; O'Gara v. Eisenlohr, 38 N. Y. 296; Northfield v. Plymouth, 20 Vt. 582, 590."

In this jurisdiction the rules applicable in a bigamy case (Williams v. State, 151 Ala. 108, 111, 44 So. 57) are:

" 'On an issue of marriage vel non, evidence of cohabitation and general, uniform reputation, and of the declarations and conduct of the parties while living together, holding themselves out to the world as man and wife, is admissible, and that these facts raise a prima facie presumption of marriage, which will prevail until overcome by evidence or neutralized by counter presumptions.' Moore v. Heineke, 119 Ala. 636, 24 So. 374.

"It was also held in that case that the presumption of an actual former marriage, arising from the fact, of continual cohabitation, etc., is rebutted by the fact of a subsequent permanent separation, without 'apparent cause, and the actual marriage, soon after of one of the parties. But- it was further said: 'Notwithstanding such evidence has been deprived of any aid from the presumption, it is still evidence tending to show, and from which the jury may infer, if it be sufficiently strong and satisfactory, either an actual ceremonial marriage,· or an actual consent or agreement to be man and wife, which, when followed by cohabitation may constitute a valid common-law marriage. * * * This court has many times held that in criminal prosecutions for bigamy— an offense of which an actual second marriage is an essential ingredient, and where every legal presumption of the innocence of the accused in contradicting the second marriage is indulged—the first marriage may be proved by evidence of the former cohabitation of the accused with a third person, and of his declarations. Langtry v. State, 30 Ala. 537; Williams v. State, 54 Ala. 133, 25 Am. Rep. 665; Buchanan v. State, 55 Ala. 154.' "

See, also, Mickle v. State (Ala. Sup.) 21 So. 66;. Parker v. State, 77 Ala. 47, 54 Am. Rep. 43:

Any other rule would prevent the drawing of reasonable· conclusions from the facts in evidence, as they relate to the most serious or vital human conduct. The affirmative charges in question and that denominated as No. 13, in the original record, were properly refused by the trial court.

The writ is awarded,. and the judgment is

reversed and the cause remanded to the Court of Appeals.

All the Justices concur.