## CHARLOTTE SPEARS *v.* ABNER P. BURTON.

1. EVIDENCE: SURVEY: PLAT AND CERTIFICATE.—A plat and certificate of a survey made in pursuance of an order of court, directing the survey of the lands in controversy, if they show generally the metes and bounds of the tract, is sufficiently definite to be introduced as evidence to the jury, without the particular parcels or lots of which the tract is composed being designated therein.
2. EVIDENCE: PAROL: ADMISSIBLE TO EXPLAIN A SURVEY.—Parol evidence is admissible to explain the situation, locality, and boundaries of land described in a plat and certificate of survey, made under an order of court.
3. WITNESS: COMPETENCY.—In an action for the recovery of land, which the plaintiff claims, as heir of his father, a relative of the father, who would be his next of kin, and one of his heirs, in case the illegitimacy of the plaintiff be established, is an incompetent witness for the defendant, to prove such alleged illegitimacy.
4. EVIDENCE : PEDIGREE: DECLARATION OF DECEASED PERSONS.—The declarations of a deceased person, that her former husband was dead at the time of her second marriage, are competent evidence on the trial of an issue involving the legitimacy of the children of such second marriage.
5. EVIDENCE: PRESUMPTION AS TO DEATH OF ABSENT PARTY, AND MARRIAGE.—Where a person has departed from the State, and has not since been heard from, the presumption of the law is, that he is alive, until the lapse of five years, and after that time, that he is dead. But the presumption of life within the five years, is not sufficient to establish the illegality of a second marriage of such

person's wife, within that time; for that would be to establish a crime by mere presumption of law; and especially ought the second marriage to be deemed legal, when it is attacked after the lapse of twenty years, and during all that time the party has not been heard from.

6. EJECTMENT: POSSESSION OF ANCESTOR: SUFFICIENT TITLE TO RECOVER.—The actual possession and seisin by the ancestor, at the time of his death, of a portion of a tract of land, with a claim of title to the whole, is sufficient to cast the land by descent upon the heir, who may recover upon that title alone against a defendant who cannot show title paramount to the title of the ancestor.

In error from the Circuit Court of Warren county.  Hon. J. S. Yerger, judge.

The defendant in error sued the plaintiff, for the recovery of the possession of lots Nos. 1 and 2, of section 21, and N. W. quarter of the same section; and also for that portion of section 22, being lot No. 3, lying west of Clear creek; all of said land being in township 16, range 5 east, in Warren county, in this State.  The plaintiff claimed, as heir of his father, A. P. Burton, deceased.  The defendant answered, denying generally all the allegations of the complainant, and specially denying that plaintiff was the heir of A. P. Burton, deceased.

Before the trial, by order of the court, the surveyor of Warren county was directed to "go upon the premises in controversy, and survey and lay out the same, as either party may direct, and make due report thereof" to the court.

Upon the trial of the cause, which took place in June, 1856, the plaintiff proved by witnesses Cook and Marble, in substance, that they were well acquainted with the land in controversy; had lived in the neighborhood, and had frequently been on it, both whilst A. P. Burton was alive, and after his death.  That the said Burton died in possession of it; that he had in possession, and cultivated lot No. 3, in section 22, the same being all the land in said section, west of Clear creek; that he had also cleared a part of lots 1 and 2, in section 21; that his house was situated on one of these two last-named lots; that the lot 3, in section 22, adjoined the tract composed of lots 1 and 2, and the N. W. quarter of section 21; and that the defendant was now in possession of the same land formerly occupied by Burton, and possessed by him at the time of

his death; and that the land in controversy was always known and recognized in the neighborhood as the "old Burton place."

The plaintiff then offered in evidence, the report of the county surveyor, made under the order of the court. The defendant objected to its introduction, upon the ground "that the order of survey made by the court, directed certain lots of land to be surveyed, and the survey does not appear to be the same land mentioned in the order for survey; and that the plat and certificate does not identify any land." The court overruled the objection, and permitted the report to go to the jury. The following is a copy of the report:—

"STATE OF MISSISSIPPI,  
    *Warren county.*   }

"In pursuance of an order, made at the January special term, 1856, Judge Yerger presiding, I have surveyed the above plat or parcel of land, lying in sections 21 and 22, township 16, range 5 east, in the district west of Pearl river, commencing at A, corner to sections 17, 16, 20, 21; thence south 40 chains, to a stake; thence east $101\frac{60}{100}$ chains, to a stake; thence north 25 chains, to Clear creek; thence along the meanderings of Clear creek, to the section line, between sections 21 and 22; thence north on said line to the corner to sections 16, 15, 21, 22; thence west $80\frac{20}{100}$ chains, to the beginning, and found the same to contain $357\frac{87}{100}$ acres.

"Given under my hand and seal, this first day of May, 1856.

T. C. CLARK, D. S. [L. S.]"

After this report was read to the jury the defendant moved the

court to exclude so much of the testimony of witnesses Cook and Marble as related to the boundaries of the land, which motion the court overruled. Plaintiff introduced patents from the Government of the United States, conveying lots 1 and 2, in section 21, to said A. P. Burton. He further proved, that he was the only child of said A. P. Burton, being the only issue of the marriage between him and Matilda Foster, plaintiff's mother, and that his parents were both dead.

Defendant then proved by a record, that said Matilda was married to one A. L. Bayard, on the 27th day of December, A. D. 1825. He then offered in evidence the deposition of Mrs. M. G. Mithcherson, the sister of the defendant and of said A. P. Burton, deceased. This deposition tended to show that said A. L. Bayard, the first husband of Mrs. Burton, was alive at the time of her marriage with the plaintiff's father. The plaintiff objected to the introduction of the deposition of the witness, upon the ground that she was interested in showing his illegitimacy, on which event she and defendant would be the only heirs of Burton. The court sustained the objection. The defendant then proved by the post-master at Bovina, that after plaintiff's mother was married to his father, she deposited a letter in the post-office at that place, directed to said A. L. Bayard, at Cecil, in the State of Maryland. But the witness stated, on cross-examination, that no answer was ever received to said letter, and that he had applied to one Muir, who had lived in that part of Maryland, and was well acquainted there, to write to his acquaintances in that State, for information concerning said Bayard, but that nothing was ever discovered about him.

Plaintiff then proved by several witnesses, that said Bayard left this State in 1829, for the purpose of visiting his relatives in Maryland; that he carried a good deal of money with him, for the purpose of buying negroes in that State and bringing them to this State for sale; that he left with the view of going through New Orleans; and that, although frequent and diligent inquiries were made concerning him, both in New Orleans and in Maryland, where his relatives resided, that nothing had ever been heard of him since his departure from this State. He further proved that Mrs. Bur-

ton, his mother, had frequently stated that he was dead before her marriage with plaintiff's father; that she had used diligent efforts, (writing to New Orleans, Maryland, and other places,) to learn something of his fate, but that she had been unable to hear from him since he left: and he further proved, that it was generally understood and believed, by the relatives of said Bayard, that he was murdered in New Orleans, in 1829, by the Murrellites. Plaintiff's father and mother were married in 1834, and lived together as man and wife until the father's death, in 1836. The defendant objected to plaintiff's evidence going to the jury, so far as it related to the declarations of Mrs. Burton, and the reputation and understanding in the family; but his objection was overruled. The defendant regularly excepted to the several rulings of the court in the evidence before referred to.

The court instructed the jury, at the instance of the plaintiff, in addition to the instructions copied in the opinion of the court, as follows:—

2. If A. P. Burton died possessed of the land, and plaintiff is his sole heir at law, he is entitled to recover possession of such lands as his father died possessed of, against the defendant, unless she has shown title paramount to that of A. P. Burton.

3. The possession of A. P. Burton, at the time of his death, must have been actual of some part of sections 21 and 22, which are claimed in the declaration, but need not have been by metes and bounds. If he was in actual possession, claiming the whole of the lands described in the declaration, such possession will be sufficient to cast the lands, by descent, upon his heirs.

The defendant excepted to the instructions.

Verdict and judgment were rendered for the plaintiff; and the defendant sued out this writ of error.

*A. Burwell* and *T. J. Wharton*, for plaintiff in error,
Filed no brief.

*J. W. M. Harris*, and *Miller* and *Marshall*, for plaintiff in error.

1. Cook and Marble's testimony was rightly admitted. See *Smith* v. *Prewitt*, 2 Marsh. 158; 1 Hawks, 45; 4 Ib. 116; 10 Johns. R. 377; 5 S. & M. 319; 7 Cranch. 296; 6 Peters, 34.

2. The declarations of Mrs. Burton, and the reputation in the family, are competent. See 3 Bibb, 235; 15 Johns. R. 226; 1 Harris & Johns. 350; 1 J. J. Marsh. 105; 4 Johns. R. 52; 5 Peters, 81, 470; 1 Starkie, Ev. 58, 59; 9 Cow. 140; 6 Monroe, 259: 4 Humph. 516; 2 Brevard, 461; 8 Johns. R. 128; 1 Dallas, 14; 2 Scammon, 502.

3. The presumption of law is, that the marriage was valid, notwithstanding it took place within five years from the time Bayard was last heard from. The law never presumes that a crime has been committed. See 1 Russell on Crimes, 156; 4 Blackstone, 164, note 3; *Fenton* v. *Reed*, 4 Johns. R. 52; 2 Barn. & Ald. 386; 12 Vermont, R. 604.

4. The possession of Burton was sufficient to entitle the plaintiff to recover. See *Smith* v. *Lorillard*, 10 Johns. R. 10; 4 Wash. C. C. R. 690.

HANDY, J., delivered the opinion of the court.

This action was brought by the defendant in error, to recover a tract of land lying in Warren county, in the possession of the plaintiff in error.

The plaintiff below claimed title to the premises in controversy, as the heir-at-law of his father, Abner P. Burton, deceased, who is alleged to have died seised and possessed of the premises; and the points now presented for our consideration relate to the fact of the father's possession, and to the question whether the marriage of the plaintiff's father and mother was valid in law.

In the progress of the trial the defendant took exceptions to the admission and exclusion of evidence offered for and against her; and these points will be first considered.

First. The plaintiff offered in evidence a plat and certificate of survey made and returned by the deputy county surveyor, under a warrant of re-survey issued in the cause. The defendant objected to its introduction, on the ground that the warrant directed certain lots of land to be surveyed, and that the plat and certificate offered did not appear to be of the same land, and did not identify the land. The objection was overruled, and the evidence permitted to be read to the jury.

By the warrant of re-survey, the lands in controversy were required to be surveyed. The plat and certificate appear to be general, and do not specify the distinct parcels of the land. Yet the land surveyed is described by metes and bounds; and that description must be taken to apply to the lands which the surveyor was required to survey. It does not appear that he was required to describe and designate each part of the land sued for, by itself; and for aught that appears, the survey and description were sufficiently specific to show the general bounds of the land sued for, and to enable the plaintiff to show by other witnesses that the lands so described were in the possession of his father. This must have been the object of having the re-survey; and we think that the description was sufficiently definite for that purpose.

Secondly. The defendant next moved to exclude the testimony of the witnesses Cook and Marble, given in behalf of the plaintiff to show the boundaries and description of the land, on the ground that the re-survey and certificate made and returned in the cause, were the only evidence that could be submitted to the jury to show the boundaries; but the motion was overruled.

It was certainly competent to explain the situation and locality of the land described in the surveyor's return by parol evidence. From necessity, the description of lands in plats, and certificates made by surveyors, may be very inadequate to convey a correct idea of the situation of the premises; and without the aid of explanatory parol evidence, such documents would be of but little use in the settlement of questions depending upon possession and boundary of lands. In this case, the testimony objected to had reference rather to the fact of possession of the lands by the plaintiff's father, than to the description of the lands; and in proving the possession of the father, it became necessary for the witnesses to explain the situation of the land so possessed. But it is clear, that boundaries may be proved by parol, and that it is competent to explain the description of the lands sued for, so as to bring them within the description made under a warrant of re-survey; in other words, to show that the lands sued for, and the lands surveyed, are the same.

Thirdly. The defendant offered in evidence the deposition of Mrs. Mitcherson, the tendency of which was to prove that the mar-

riage of Abner P. Burton, the plaintiff's father, with his mother, was not valid in law; and consequently that the plaintiff was not entitled to the land in controversy, as heir-at-law of A. P. Burton. It appeared that this witness and the defendant in this action were the sisters of A. P. Burton, the plaintiff's father, and would be his heirs if the plaintiff was not his lawful child. The plaintiff, therefore objected to the deposition, on the ground of incompetency of the witness for interest; and the objection was sustained. The propriety of this decision is too clear to admit of controversy.

Fourthly. The defendant moved to exclude certain parts of the depositions of the witnesses Fergurson, Selden, and Cochran, read in behalf of the plaintiff, showing that these witnesses had often heard the plaintiff's mother state, many years ago, that one Bayard, who was her husband before she married the plaintiff's father, was dead prior to her marriage to the plaintiff's father; and that he had never been heard of since he left her in the year 1829; and that the general reputation among their family connexions was that he was dead. But the court refused to exclude the testimony; and we think properly, on well settled rules.

It appears that the plaintiff's mother was dead, and her declarations that her former husband was dead, are competent evidence of his death. 1 Stark. Ev. 158, 159, (5th Am. ed.); 2 Ib. 605. So common reputation and belief, in the family and among their relations, of the death of a party, are competent evidence of the fact. 1 Ib. 158.

Lastly. It remains to consider the rules of law declared by the court to the jury in relation to the marriage of the father and mother of the plaintiff.

It appears that prior to the year 1829, the plaintiff's mother had been lawfully married to one Bayard; that he left her in this State in the year 1829, for the purpose of going temporarily to the State of Maryland, his native place, by way of New Orleans; that he never returned, and was never afterwards heard of, and was believed by his family and friends to be dead, and probably murdered in New Orleans for his money; that his widow, or wife, afterwards married the plaintiff's father in the year 1834, of which marriage the plaintiff was the sole issue, and that they lived

together as husband and wife for several years, until the death of the plaintiff's father.

Upon this point the court instructed the jury as follows :—

5. If the mother of the plaintiff was married to Bayard before her marriage with Burton, the plaintiff's father, and Bayard was alive at the time of her marriage with Burton, the marriage with Burton would be void, and the plaintiff would not be heir-at-law of A. P. Burton, deceased.

6. The marriage of the plaintiff's mother with his father, A. P. Burton, although it may have been within five years after the departure of her former husband, Bayard, is to be held valid by the jury, unless the proof satisfies them that Bayard was alive at the time of the marriage of A. P. Burton with the plaintiff's mother; the presumption of law as to the continuance of the life of Bayard after his departure, will not be sufficient to establish the fact that Bayard was alive at the time of the marriage of A. P. Burton with plaintiff's mother.

We consider these instructions as stating the correct rule upon the subject. It is true, that the presumption of law is, that Bayard was alive until the lapse of five years after his departure had given rise to the presumption created by the statute that he was dead. But there is also a presumption of law that the marriage of the plaintiff's father and mother was valid, it having been solemnized in due form of law. It was valid, unless the former husband was living at that time. But unless he was shown to be then living, the presumption must be indulged that he was dead; because, otherwise, the second marriage would be held criminal, by reason of a presumption; which would be to establish a crime upon a bare presumption. *Rex* v. *Gloucestershire*, 2 Barn. & Ald. 386. Moreover, the probabilities greatly strengthen the legal presumption of Bayard's death at the time, and show its justice under the circumstances of this case, as he has never been heard of since his departure. It would therefore be unjust and unreasonable to give force to the presumption that he was living at the time of the second marriage, when subsequent facts tend strongly to show that the presumption of his death, upon which the parties acted, was true in point of fact.

The other instructions given by the court appear to declare proper rules upon the points embraced by them, and we perceive no error in them.

Having thus considered the several grounds of exception presented in the record, we think that they show no good ground for reversing the judgment.

Judgment affirmed.