GIBSON *v.* STATE, 38 Miss. R., 313.

### BIGAMY.

Where a man marries a woman whose husband by a former marriage has been absent and unheard of for five years previous to such second marriage, the law presumes that such first husband is dead, and that the second marriage is valid. Hutch. Code, 977, § 2.

The legal presumption of the death of a husband or wife who has been absent without being heard from for five years, and the consequent validity of a second marriage con-

tracted by the abandoned party, after the expiration of that period, will be acted on in a prosecution for bigamy against one of the parties to such second marriage who subsequently, and during the life of the other, has contracted another marriage.

Error to Warren circuit court. Yerger, J.

The plaintiff in error was indicted and convicted in the court below of bigamy.

The opinion of the court contains a sufficient statement of the case.

*Brooke and Smedes*, for plaintiff in error.

In prosecutions for bigamy, the death of a person (if the fact of his being alive is material in defense of the accused), will not be presumed from mere lapse of time, unless the period elapsed goes beyond the ordinary habits of human life. Spears v. Burton, 31 Miss., 547; Rex v. Twining, 2 B. & A.

The rule would be reversed, when the fact of a person being alive would be essential to the defense of the accused. The person would be presumed to be alive, notwithstanding he may have been absent or unheard of for more than five years. The presumption of law as to life or death shifts in favor of innocence. If this proposition be true, the bare rumor of the death of Williams, unsupported by any fact except that of his absence, was insufficient to rebut the presumption of law, made in favor of the accused, that he was alive.

The third instruction asked for by the state and given, is manifestly erroneous. Instead of giving to the accused on trial the benefit of the legal presumption of innocence, it gives it to Maria Gibson, a party not on trial, and not even a witness in the case. No matter whether she was guilty of bigamy or not, her guilt or innocence was not in question, and a presumption could not be made in her favor against the accused. The instruction took away from him the presumption of innocence with which the law clothed him, by making an issue between him and her, and giving her the benefit of such presumption.

*T. J. Wharton*, attorney general.

The conviction in this case was clearly correct, and the judgment should be affirmed. It is an indictment under the law as

it stood prior to the adoption of the new code, the offense having been committed at the date of the marriage to the second wife, which was on the 7th of July, 1857. Hutch. Code, 977. The second section declares that the statute shall not apply "to any person, by reason of any former marriage, whose husband or wife by such marriage shall have been absent for five successive years, without being known to such person within that time to be living," &c.; and upon this principle the said Maria, first wife of plaintiff in error, did not incur the pains and penalties of the act, because more than six years had transpired from the date of her previous marriage to the said E. H. Williams, and very nearly six years had elapsed during which said Williams had absented himself; and, therefore, her second marriage with Gibson was valid. It follows, then, that the plaintiff in error having afterwards remarried, his former wife being yet alive, subjected himself under the statute to a prosecution for bigamy.

Common reputation, and a belief in the family that a party is dead, are competent proof of the fact of his being dead. 1 Stark. Ev. (5th Am. ed.), 158, 159; 2 ib., 605.

The whole reasoning of the court in the case of Spears v. Burton, 31 Miss., 547, relied on by plaintiff in error as an authority justifying a reversal of this case, is a clear recognition of the principles asserted in the instructions given in this case for the state.

It would be a monstrous perversion of the rules of law, and operate as a covert injury to an innocent woman, to indulge the presumption that Williams was yet alive; and that she, instead of the plaintiff in error, is the guilty party. It would be a presumption to favor a guilty party, and subject an innocent one to a prosecution for bigamy. The first marriage was solemnized in due form of law. This court said, in the case of Spears v. Burton, *supra*, "It is true that the presumption of law is, that Bayard was alive until the lapse of five years after his departure had given rise to the presumption, created by the statute, that he was dead. But there is also a presumption of law that the marriage of plaintiff's father and mother was valid, it having been solemnized in due form of law. It was valid unless the former husband was living at that time. But unless he was

shown to be then living, the presumption must be indulged that he was dead; because, otherwise, the second marriage would be held criminal by reason of a presumption, which would be to establish a crime upon a bare assumption." And again: "It would, therefore, be unjust and unreasonable to give force to the presumption that he was living at the time of the second marriage, when subsequent facts tend strongly to show that the presumption of his death, upon which the parties acted, was true in point of fact.

Greenleaf says, speaking of bigamy: "The indictment states the first and second marriages, and alleges that at the time of the second the former husband or wife was alive. The proof of these three facts make out the case on the part of the prosecution. As to the first marriage, it is sufficient to prove that a marriage in fact was celebrated according to the laws of the country in which it took place; and this, even though it were voidable, provided it was not absolutely void." 3 Greenl. Ev., 189, § 204. Upon proof that the first husband was living when the second marriage was had, it was held a good defense; the second marriage being a nullity; and the third, therefore, valid. But the prior marriage must be shown to be absolutely void; for if only voidable, and not avoided before the second marriage, it is no defense. Ib., 190, § 208. It rested upon the defense to disprove the case made out by the state by affirmative proof that Williams was alive when he married the said Maria.

The judgment of the court below was correct, and should be affirmed.

HANDY, J.:

This was an indictment for bigamy, upon which the plaintiff in error was convicted.

On the part of the state, it was in evidence that the accused was married, in due form of law, to one Maria Williams, in Warren county, in this state, on the 1st day of May, 1855; and that he was married, in due form of law, to one Ann Cochran, on the 7th day of July, 1857, the said Maria being alive at the date of the latter marriage.

It was then shown, on the part of the accused, that the said

Maria had been lawfully married in Warren county to one Elijah H. Williams, on the 20th February, 1849.

It was then proved by the state, by the testimony of two witnesses, one the uncle, and the other a member of the family, of said Maria Williams, that in October, 1849, Elijah H. Williams left the neighborhood, and has not since been seen there; that in the winter of that year a report came to the neighborhood that he had been drowned in Old river; that said report was believed and acted upon in his family and that of said Maria; that since the indictment, the witnesses had heard a rumor that said Williams was alive; but it came from a low man, who, from the witnesses' knowledge of his character for truth and veracity, was not worthy of belief on oath; that, with this exception, said Williams has not been seen or heard from since his departure.

Upon this evidence the accused was convicted.

The ground upon which the judgment is alleged to be erroneous is the rule stated in several of the instructions given by the court to the jury, and, among others, in the fifth instruction at the instance of the state, which is as follows: "Although the jury may believe, from the evidence, that the defendant, James A. Gibson, was married to Maria A. Williams on the 1st May, 1855, and within five years next after the departure of her first husband, Elijah Williams, from Warren county, nevertheless, the marriage of said defendant with said Maria Williams is to be considered legal and valid by the jury, unless the proof in the cause satisfies them that Elijah Williams, the first husband, was alive at the time of the marriage of said Gibson with said Maria. The presumption of law as to the continuance of the life of said Elijah Williams after his departure from Warren county will not be sufficient to establish the fact that said Elijah was alive at the time of the marriage of said defendant Gibson with said Maria, in opposition to the presumption of law of his death, arising from such continued absence of said Williams, unheard of for five years.

The position taken in the defense is that the marriage of the accused to Maria Williams was unlawful, because her husband by her former marriage was not proved to be dead; and that

the legal presumption of his death, arising from the fact of his continued absence for five years, unheard of, cannot be applied in a case of criminal prosecution, as evidence of his death, and thereby render the marriage of the accused with Maria Williams legal, in presumption of law, so as to subject him to the crime of bigamy, on account of his subsequent marriage.

The question upon which this position depends is whether the marriage between the accused and Maria Williams was in law valid, under the circumstances in which it was contracted. It appears by the evidence that her former husband had been absent for more than five years at the time, and had not been heard of during that period; that he had been reported to be drowned, and that the report was believed and acted on in the family connection, and Williams has not since made his appearance, and is not shown to have been alive, since his departure. That under such circumstances the marriage was celebrated in due legal form. In point of civil rights, resulting from the marriage, it cannot be doubted that such a marriage would be valid, the former husband not having been proved to be alive after it took place. The right of dower in the wife would have existed, and the offspring of the marriage would have been legitimate and the legal heirs of the father's estate. This results from the presumption of law created by our statute in relation to bigamy, exempting any person from the penalty of the statute who shall contract another marriage after the husband or wife shall have been absent for five successive years, without being known to the person contracting the marriage to be living. Hutch. Code, 977, § 2.

Where the fact of the celebration of the marriage, and in due form of law, is fully proved in such cases, there appears to be no difference as to its validity, between the civil and criminal consequences which may proceed from it. The question in both respects is, whether the parties were competent to contract a legal marriage; and when the presumption of law exists that the former husband is dead, by reason of his absence for five successive years, unheard of, the disability of the party is removed by the legal presumption, and she is competent to con-

tract a new marriage, which is legal and valid to all intents and purposes, until the presumption of death be removed by proof that the absent husband was alive at the time of its celebration. It only becomes illegal, either as to civil rights or criminal consequences, upon the production of such proof.

It is objected that the exemption from punishment of a party marrying in case of absence of a husband, created by the statute, only relieves that party from the penalty, but does not operate to give validity, in presumption of law, to the new marriage, as to the husband of that marriage, so as to bind him to its consequences as a legal marriage; and it is argued that this would be to make her innocence the ground of a presumption that the marriage was legal on his part, and convict him by reason of his subsequent marriage upon a presumption of guilt. But this is an erroneous view of the question. The point of inquiry is, whether his marriage to Maria Williams was legal. The presumption of law is that it is. The effect of the statute is to make it legal as to her, unless her husband were then alive, and the presumption is that he was dead. It must also be presumed to be valid as to him, under the circumstances, for it cannot be presumed to be valid as to one party, and held to be void as to the other. For that would be to render him guilty of adultery for cohabitation with a woman whose marriage with him was, as to her, presumed to be legal and valid, until the contrary was shown, which would be absurd.

The law presumes the marriage to be valid as to him. Spears v. Burton, 31 Miss., 547. And in opposition to that presumption, without evidence destroying it, he cannot be heard to allege that it was illegal, in order to avoid the punishment of his crime in abandoning the duties which he thereby assumed, and contracting marriage with another woman. Nor is he to be permitted to complain that the presumption of the legality of his former marriage is to be used for the purpose of convicting him of the crime of his subsequent marriage. The presumption is one of innocence, which he cannot complain of, because he subsequently committed a crime, in relation to which, the presumption in the former case operates against him.

The instructions of the court are in accordance with these views, and the judgment is correct, and must be affirmed.

SMITH, C. J., dissented from the above opinion.