## JAMES G. BENNETT v. STATE.

[56 South. 777.]

1. BIGAMY. *Evidence. Presumptions. Burden of proof. Indictment. Code* 1906, *sections* 1051, 1052.

Where a defendant was indicted for bigamy under Code of 1906, section 1051, which provides that "every person having a husband or wife living, who shall marry again, except in the cases hereinafter named, shall be guilty of bigamy," the burden of proof was on accused to prove that his second marriage was within the exceptions named in Code 1906, section 1052, and the state was not required to introduce any evidence to show that the first marriage had not been dissolved, in order to make out a *prima facie* case against the defendant.

2. SAME.

Where the evidence in such case shows beyond a reasonable doubt the first and second marriages and further shows that at the time of the second marriage the first wife of accused was living, the proof of these facts made out the case on the part of the prosecution.

3. BIGAMY. *Evidence. Burden of proof.*

While it is the well-established rule in civil cases that, in attacking the validity of a marriage ceremony on the ground of a former marriage, the burden of proof is upon the attacking party to show that there was no divorce from the first wife, it is equally well established that this rule does not apply in prosecutions for bigamy.

4. INDICTMENT. *Statutory exceptions.*

Where the exception is so engrafted in the enacting clause of the statute that the offense cannot be described without meeting and negativing the exception, it must always be set out in the indictment, but where the exception is contained in some other statute, or is clearly separable from the offense, and the crime may be described without reference to the exception, then the latter is a matter of defense and need not be mentioned in the indictment.

5. CRIMINAL LAW. *Burden of proof. Presumptions.*

   While it is the universal rule of evidence that every person is presumed innocent until proven guilty, this presumption does not impose upon the state the burden of negativing distinct defense, not necessarily negatived in proving the offense.

6. CRIMINAL LAW. *Evidence. Burden of proof.*

   The maxim, that the burden of proof never shifts in criminal cases from the state, means only that it never shifts in so far as is necessary to make out the specific charge laid in the indictment, by establishing the *corpus delicti* and the constituent elements of the crime. When distinct substantive matter is relied upon by defendant to exempt him from punishment and absolve him from liability, the burden of proof is upon the defendant to establish such defense.

APPEAL from the circuit court of Yazoo county.

HON. W. A. HENRY, Judge.

James G. Bennett was convicted of bigamy and appeals.

The facts are fully stated in the opinion of the court.

*E. L. Brown* and *Barbour & Henry,* for appellant.

In our reports, without a single exception, every case to be found supports the rule that the party assailing the validity of a marriage has the burden to show that there was no divorce, although such burden involves proof of a negative. *Hull* v. *Rawls,* 27 Miss. 471; *Spears* v. *Benton,* 31 Miss. 554; *Gibson* v. *State,* 38 Miss. 313; *Collins* v. *Wilkie,* 48 Miss. 496; *Railway* v. *Beardsley,* 79 Miss. 417; and *K. of P.* v. *Tucker,* 92 Miss. 505. All cases from 1854 to 1909, announce the rule, with no intimation that there is any sort of exception of it. And all of these cases place the rule, whether in civil or criminal cases, upon the presumption of innocence and the pre-

sumption in favor of the legality of a marriage shown to have taken place.

The rule with reference to pleading exceptions contained in statutes, invoked to avoid our contention, squarely supports us. It is thus stated in *Thompson* v. *State,* 54 Miss. 744.

"It is often difficult to determine when an indictment under a statute defining an offense, and containing exceptions, should by express averment negative the exceptions, and when they may be omitted and left to the defendant to set up by plea. It may be said generally, that where the exception is so engrafted in the enacting clause of the statute that the offense cannot be described without meeting and negativing the exception, it must always be set out in the indictment; but that where the exception is contained in some other statute, or is clearly separable from the offense, and the crime may be described without reference to the exception, then the latter is a matter of defense, and need not be mentioned in the indictment. *Steel* v. *Smith,* 1 Barn. & Ald. 94; *State* v. *Abbey,* 29 Vt. 60; 1 Bishop Crim. Proc. 631 *et seq.; United States* v. *Cook,* 17 Wall. 168."

The case, cited by this court, of the *United States* v. *Cook,* 17 Wall. 168, cites many illustrations of the application of the rule, and criticises the application of it in the Massachusetts case, *Com.* v. *Hart,* 11 Sus. 132, and this court in *Railroad* v. *Beardsley,* 79 Miss. 417, says the Massachusetts court adopts a curious line of reasoning in *Commonwealth* v. *Boyer,* 7 All. 306.

It is too plain for argument that the rule with reference to pleading exceptions does not aid the state, because the crime cannot be described without affirming the existence of a wife, at the time of the second marriage, and such affirmation may be made, either by alleging the first marriage and negativing a divorce, or by alleging the first marriage, and affirmatively alleging the relation of husband and wife at the time of the sec-

ond marriage. One or the other method must be employed, and the indictment did both in this case.

"In criminal cases, the burden of proof never shifts; before a conviction can be had, the jury must be satisfied, from the evidence, beyond a reasonable doubt, of the affirmative of the issue presented by the indictment." 2 Enc. L. (1st. Ed.), 657, and the burden of proof can be on the defendant only to prove "an independent exculpatory fact." 1 B. 657, note.

Now, the only "independent exculpatory facts" contained in section 1052 are those with reference to the absence of the husband or wife. Such absence "exempts from the penalty of the statute," but the second marriage is, nevertheless, bigamous, if the first one has not been dissolved. *Gibson* v. *State*, 38 Miss. 322. But, if the first marriage has been dissolved by the decree of a competent court, for any one of the reasons provided by law, the second marriage can not be bigamous. *Crawford* v. *State*, 73 Miss. 177. The reason is that, however long the absence, the parties are still husband and wife, but, after decree of the court, they are not, and bigamy can be predicable only of the existence of one wife and a marriage ceremony.

But, the state assumed the burden of proving the negative, if we can possibly be mistaken, upon the foregoing considerations, as to where the burden of proof lies. Upon elementary principles of pleading, the allegation that no divorce was had bound the state to prove the negative. *Broughton* v. *State*, 71 Miss. 90, without expressly adverting to those elementary principles, settles this case. It was there assumed that the insertion of "needless averments" in the indictment placed upon the state the burden of proving those averments; and the prediction was made that such assumption of the burden would make "the prosecution more difficult of successful accomplishment." 5 Ency. Law (2nd Ed.), 28, "Providing Negative," and notes.

*Carl Fox,* assistant attorney-general, for appellee.

It is true in civil cases the rule is well established in this state that the burden of proof is upon a person who attacks the validity of a marriage ceremony, on the ground of a former marriage, to show that there was no divorce from the first wife.

It does not follow necessarily, however, that that is the rule in prosecution for bigamy under section 1051 of the Code of 1906. Leaving out that part of the section which is not relevant in this case, it is as follows:

"Every person having a husband or wife living, who shall marry again, . . . except in the cases hereafter named, shall be guilty of bigamy. . . . "

It is perfectly true, of course, that if the first marriage has been dissolved, there is no bigamy in a second marriage. If, as contended by counsel for appellant, the legislature intended that the burden should be upon the state, to prove no divorce, why does not section 1051 have the words "and not divorced," or words meaning the same thing, after the word "living?" Section 1052, of the Code is as follows:

"The last section shall not extend to any person,

"(1) Whose husband or wife shall have been absent for seven successive years, without being known to such person, within the time, to be living;

"(2) Nor to any person whose husband or wife shall have absented himself or herself from his or her husband or wife, and remained without the United States continually, for seven years;

"(3) Nor to any person by reason of any former marriage, which shall have been dissolved by the decree of a competent court, unless the said degree provide that such person shall not be at liberty to marry again;

"(4) Nor any person, by reason of any former marriage which shall have been pronounced void by the sentence or decree of a competent court, for the nullity of the marriage contract;

"(5)  Nor to any person by reason of any former marriage, contracted by such person within the age of legal consent, and which shall have been annulled by the decree of a competent court."

It seems plain that the exceptions, as they are called in the title of section 1052, are defenses; that the legislature never intended that the burden should be upon the state to prove, in any case, that it did not come within one of those exceptions.  Such a construction of sections 1051 and 1052, would make it impossible in a great many cases to convict.  The construction which counsel for appellant would have the court put upon these sections makes it impossible to convict anyone under the circumstances surrounding this case.

In defining the crime, as I have already pointed out, the legislature confined it to those persons "having a husband or wife living who have married again."  The rule contended for by counsel for appellant is well established in civil cases, but it is also well established that that rule does not apply in prosecutions for bigamy. *Fletcher* v. *State,* 81 N. E. 1083, 169 Ind. 77, 124 Am. St. Rep. 219; *Sokel* v. *People,* 72 N. E. 382, 212 Ill. 238; *State* v. *Goulden,* 47 S. E. 450, 134 N. C. 743; *Commonwealth* v. *Boyer,* 89 Mass. (7 Allen) 306; *Fleming* v. *People,* 27 N. Y. 329; *People* v. *Spoor,* 85 N. E. 207, 235 Ill. 230.  See, also, *State* v. *Kniffen* (Washington, 1906), 87 Pac. 837; Bishop on Statutory Crimes (3d. Ed.), sec. 608; Underhill on Criminal Evidence, sec. 405, p. 683; *Hanley* v. *State,* 21 Ohio Cir. Ct. Rep. 584, O. C. D. 488, cited in a note to *Pittinger* v. *Pittinger,* 89 Am. St. Rep. 200.

In *Gibson* v. *State,* 38 Miss. 338, among others, the court granted the following instructions for the state;

"That the offense of bigamy upon the part of a man consists in marrying another woman, having a wife living at the time of his second marriage; and if the jury believe from the evidence in the cause that the defendant

was legally married to Maria Williams on the 1st of May, 1855, and that afterwards, and during the life of said Maria (he knowing her to be living), defendant was married to Ann Cochran, as charged in the indictment, then they ought to find the defendant guilty of bigamy as charged.''

The court held that this instruction was correct.

It is argued by counsel for appellant that the fact that there has been no divorce from the first marriage is a constituent part of the offense of bigamy. Their argument simply amounts to this, that if there is a divorce from the first marriage, then the second marriage is not bigamy. That is all very true, but the immediate result of such a rule if established by the courts, would be that the state in every prosecution of crime would carry the burden of proof of the non-existence of all possible offenses. A moment's consideration of the various crimes, and of their defenses, will show that this is true, and that the argument of counsel for appellant is fallacious. If the appellant was divorced from his first wife, then the fact is locked within his own breast, and the rule is in such cases, that the burden is upon the defendant. Underhill on Criminal Evidence, sec. 24; 12 Cyc. 381, 382.

Of course this rule is not one of universal application but it is a rule of fairness, and is peculiarly a rule of expediency without which in many cases crimes could be committed with impunity.

Moreover, the legislature may by statute regulate the burden of proof within limits. Underhill on Criminal Evidence, sec. 24 (a); 12 Cyc., 380. Our own statutes, making the possession of liquor in certain amounts and appliances for the sale of liquor *prima facie* evidence of the illegal sale of liquor, are good examples. I have already pointed out that it appears from section 1051, of the Code of 1906, defining the crime of bigamy, and section 1052, naming certain defenses, that the legislature intended for the burden of proof to be upon the

defendant, to establish the existence of such defendant, to establish the existence of such defenses. Else why, after the word "living," in section 1051, do not the words appear, "and not divorced, not having been absent for seven successive years without being known to such person, to be living, and not having absented himself or herself from his or her husband or wife and remained without the United States continually for seven years," etc. In 12 Cyc. 382, it is said:

"Where defendant relies as matter of defense on an exception in a statute which is not in the enacting clause, by which the offense is described and forbidden, he has the burden of proving that he is within the exception."

It is contended by counsel for appellant that since it was alleged in the indictment that defendant was not divorced from his first wife, the burden is upon the state to prove no divorce. Even if without the allegations, the burden would be upon the defendant.

In 1 Bishop's New Criminal Procedure, sec. 638, it is said:

"As on the common law, so on a statute, the indictment need not negative matter of defense." For example:

"A statute provided that one, who, 'having a former husband or wife living, shall marry another person or shall continue to cohabit with such second husband or wife in this state, . . . shall, except in the cases mentioned in the following section, be deemed guilty of the crime of polygamy;' adding in the next section 'that this shall not extend to any person whose husband or wife has been continually beyond the sea;' " and some other things. Thereupon it was held to be unnecessary in the indictment to negative this proviso. Even apart from the form of language, its matter is simply defensive. "A negatiave not required by law may be regarded as surplusage."

McLAIN, C.

Appellant was indicted, tried, and convicted at the April term, 1911, of the circuit court of Yazoo county for bigamy, and was sentenced to the penitentiary for ten years. From this judgment and sentence he appeals to this court.

The evidence shows conclusively that on September 20, 1890, in Columbia, S. C., he was duly and legally married to Miss Ella M. Gilman, and that they lived together as man and wife in said city of Columbia. By this union, four children were born to them. In October, 1899, appellant left Columbia and his wife and children, and never returned. On March 16, 1911, in Yazoo county, Miss., appellant married in due form of law Miss Alice Woodward. At the April term, 1911, of the circuit court of Yazoo county, Miss., appellant was indicted for bigamy; the indictment charging in substance that he, "being the lawful wedded husband of one Mrs. E. M. Bennett, and never having been divorced from the said Mrs. E. M. Bennett, did then and there willfully, unlawfully, and feloniously marry and take to wife one Miss Alice Woodward, and to her, the said Alice Woodward, was then and there willfully, unlawfully, and feloniously married, the said Mrs. E. M. Bennett being then and there alive, and in full health, and not divorced by law from him, the said Jas. G. Bennett, her husband." At the same term of this court appellant was tried upon this indictment, and was convicted and sentenced to the penitentiary for ten years. It was conclusively shown that, at the time appellant married Miss Alice Woodward, his wife, Mrs. Ella M. Bennett, was alive. Indeed, she was at the trial of appellant at the time and place above described, and was presented as a witness at this trial on behalf of the state, but on objection by the appellant was not permitted to testify by the court, on the ground that she was the alleged wife of appellant. Dr. Philpot, the

stepfather of Mrs. E. M. Bennett, testified that she had lived continuously in his home after her husband, the appellant, left her; that he had never heard of any divorce proceedings being instituted in this case by appellant; that Mrs. E. M. Bennett had never received, so far as he knew, any notice of any character that appellant had commenced a suit for divorce. Appellant introduced no evidence in this case. This is substantially an abstract of the material testimony in the case.

Appellant was indicted under section 1051, Code 1906. That portion of said section relevant and material to this case reads as follows: "Every person having a husband or wife living, who shall marry again, except in the cases hereinafter named, shall be guilty of bigamy, and imprisoned in the penitentiary not longer than ten years." Section 1052, Code 1906, is as follows: (1) "The last section shall not extend to any person whose husband or wife shall have been absent for seven successive years, without being known to such person, within the time, to be living;" (2) "nor to any person whose husband or wife shall have absented himself or herself from his or her husband or wife, and remained without the United States continually for seven years;" (3) "nor to any person, by reason of any former marriage which shall have been dissolved by the decree of a competent court, unless the said decree provide that such person shall not be at liberty to marry again;" (4) "nor to any person, by reason of any former marriage which shall have been pronounced void by the sentence or decree of a competent court, for the nullity of the marriage contract;" (5) "nor to any person by reason of any former marriage, contracted by such person within the age of legal consent, and which shall have been annulled by the decree of a competent court."

Upon the trial of this case, at the request of the district attorney, the court instructed the jury, for the

state, ''that if they believe from the evidence beyond
all reasonable doubt that the defendant, J. G. Bennett,
married Miss Ella Gilman, September 20, 1890, in the
state of South Carolina, and afterwards, and while said
Ella Gilman was living, married Miss Alice Woodward
in Yazoo county, Miss., then it is the sworn duty of the
jury to return the following verdict: 'We, the jury,
find the defendant guilty as charged.' ''

Considering this instruction, along with the evidence
and the instructions refused for the defendant, it is
manifest the holding of the trial judge in effect was that
the burden of proof rested upon the defendant to show,
if he could, or so desired, that he came within one of
the exceptions mentioned in section 1052, Code of 1906.
In other words, the prosecution was not required to in-
troduce any evidence to show that the first marriage to
Mrs. E. M. Bennett was not dissolved, in order to make
out a *prima facie* case against appellant. Appellant
seems to contend that, when his second marriage was
consummated in accordance with the forms of law, it
must be presumed that his former marriage with Mrs.
E. M. Bennett had been dissolved, and the burden of
showing that such marriage had not been dissolved
rested upon the state. This is not the rule of law. The
great weight of authority holds to the contrary. The
evidence in this case shows beyond a reasonable doubt
the first and second marriages, and it further shows that
at the time of the second marriage his first wife, Mrs.
E. M. Bennett, was alive. The proof of these three facts
makes out the case on the part of the prosecution. The
great weight of authority holds that the burden is on
the state to prove beyond a reasonable doubt both mar-
riages, and that at the time of the second marriage
the wife of the appellant by his first marriage was liv-
ing. When this is done, that completes the offense.
3 Greenleaf on Ev., sec. 204; *State* v. *Goulden,* 134 N.
C. 745, 47 N. E. 450. The defense may be made by

showing that the defendant's case comes within any of the exceptions found in section 1052, Code of 1906. The burden was on him to show, if he could, that he was divorced from his first wife. The authorities for this are abundant. Underhill on Crim. Ev. (2d Ed.), sec. 405; *State* v. *Barrow,* 31 La. Ann. 691; *State* v. *Lyons,* 3 La. Ann. 154; *Stanglein* v. *State,* 17 Ohio St. 453; *State* v. *Abbey,* 29 Vt. 69, 67 Am. Dec. 754; *Fleming* v. *People,* 27 N. Y. 329; *State* v. *Williams,* 20 Iowa, 98; 2 Wharton on Crim. Law (10th Ed.), secs. 1704, 1705; 2 McClain Crim. Law, sec. 1080.

It is the well-established rule in civil cases that, in attacking the validity of a marriage ceremony on the ground of a former marriage, the burden of proof is upon the attacking party to show that there was no divorce from the first wife. This is the well-established rule in civil cases, but it is equally as well established that the rule does not apply in prosecutions for bigamy. "In fact, we know of no case where it has ever been held that the rule that 'the burden of proof never shifts from the state' has been held to extend further than proof of the case as charged in the indictment; nor of any case where, if the defendant seeks to excuse himself from liability on account of some substantive distinct matter, he has not been held to have the laboring oar, and the onus of making good his issues thus presented." *Ake* v. *State,* 6 Tex. App. 419, 32 Am. Rep. 586. "It is often difficult to determine when an indictment, under a statute defining an offense, and containing exceptions should by express averment negative the exceptions, and when they may be omitted and left to the defendant to set up by plea. It may be said generally that, where the exception is so ingrafted in the enacting clause of the statute that the offense cannot be described without meeting and negativing the exception, it must always be set out in the indictment, but that where the exception is contained in some other statute, or is clearly

separable from the offense, and the crime may be described without reference to the exception, then the latter is a matter of defense, and need not be mentioned in the indictment." *Thompson* v. *State*, 54 Miss. 744; *Steel* v. *Smith*, 1 Barn. & Ald. 94; *State* v. *Abbey*, 29 Vt. 60, 67 Am. Dec. 754; 1 Bishop, Crim. Proc., sec. 631 *et seq.; United States* v. *Cook*, 17 Wall. 168, 21 L. Ed. 538. "It is a universal rule of evidence, founded on the most obvious principles of justice and policy, and derived from the great fundamental maxim of law, that every person must be presumed innocent until proved to be guilty." Burrill on Crim. Ev. 728. "But, while this is true, it must be remembered there may be cases where a defendant relies on some distinct substantive ground of defense to a criminal charge, not necessary to a prosecution on which the indictment is founded, in which the burden of proof is shifted on the defendant." *Commonwealth* v. *McKie*, 1 Gray (Mass.) 61, 61 Am. Dec. 410. "The maxim, that the burden of proof in criminal cases never shifts from the state, means only that it never shifts in so far as it is necessary to make out a specific case of murder, or rape, or any other offense charged in the indictment, by establishing the *corpus delicti* and the constituent elements of the crime. When distinct substantive matter is relied upon by the defendant to exempt him from punishment and absolve him from liability, then that is matter foreign to the issue as made by the state in her charge against him, and the burden of proving it, in reason, common sense, and law, should be upon the defendant." *Ake* v. *State*, 6 Tex. App. 419, 32 Am. Rep. 586.

Our investigation clearly convinces us that the overwhelming weight of authority is to the effect that if a defendant, in an indictment for bigamy, relies upon a divorce as a justification of his second marriage, it is incumbent on him to prove it. If appellant, in this case, desired to prove, or could prove, that he was within

any of the exceptions contained in section 1052, Code of 1906, it was incumbent upon him to show that fact. If he could, or desired to, show that he was legally divorced from his first wife, the burden was upon him to show that fact, and the state of Mississippi was not called upon to offer any proof that he was not. "When the appellant is, in the first instance, shown to have done an act which was unlawful, unless he was distinctly authorized to do it, the proof of authority is upon him." 4 Elliott on Evidence, sec. 2873; *Commonwealth* v. *Boyer*, 7 Allen (Mass.) 307, and cases there cited. The authorities show that this rule is especially applicable to cases in which, as in the case before us, the subject-matter of the negative averment is peculiarly within the knowledge of the defendant.

In the trial of this case the appellant had ample notice and opportunity, above all others, to show whether a divorce had been granted, dissolving the marital rites between him and Mrs. E. M. Bennett; and, if so, he knew exactly in what county and state abundant proof of that fact might be obtained. "Public policy and convenience do not require the state, in this class of cases, to search all records extant for proof of a negative fact peculiarly within the knowledge of the defendant; but, when the state shows that the accused had been married to a woman who was still living at the time of his second marriage to another, it was incumbent upon him to show a divorce from such former wife." *Fletcher* v. *State,* 169 Ind. 77, 81 N. E. 1083, 124 Am. St. Rep. 219. The onous of proof is on him to show, as a matter of defense, that he had been divorced by competent authority at the time of his second marriage, or that his former marriage had been declared void by competent authority. Such, in substance, was the holding of the court in the case of *State* v. *Barrow,* 31 La. Ann. 691. See 1 Bishop on Marriage, Divorce and Separation, sec. 1149. Mr. Underhill, in his most excellent work on Criminal Evi-

dence (2d Ed.), sec. 405, announces the same principle:
"A marriage, shown to have been solemnized, will be
presumed to be valid until its invalidity is shown. The
rule that, when a marriage has been consummated, it
will be presumed that the former marriage of one of
the parties has been legally dissolved, does not apply in
a prosecution for bigamy; so, where the state has shown
that the accused has been married to a woman who was
still living at the time of his second marriage to an-
other, the burden was on him to show that his former
marriage had been legally dissolved."

In our opinion, the proof in this case was sufficient, and
the charge of the court given for the state presented the
law of the case. There being no error, we think that this
case should be affirmed.

In the preparation of this opinion, we have been
greatly aided by the excellent brief filed in this cause
by the learned assistant attorney-general, Mr. Carl
Fox.

PER CURIAM. The above opinion is adopted as the
opinion of the court, and for the reasons therein indi-
cated the judgment is affirmed.

On Suggestion of Error.

MAYES, C. J.

The very excellent opinion of Commissioner McLain,
written in affirmance of this cause when it was origi-
nally considered, renders it unnecessary for us to make
a lengthy response to this suggestion of error. The
opinion exhausts the subject and is adopted as the opin-
ion of the court. Indeed, counsel filing the suggestion
of error admit that the opinion of the distinguished
commissioner is supported by abundant authority, but
complain that this court has held otherwise in various
decisions, which they cite, and which we will refer to a

little later on.   In this contention the learned counsel
are in error.   The question presented by this record
has never been decided by this court before, nor has it
ever been presented, so far as this court has been able
to ascertain.   Every case which counsel cite as having
been decided by this court, except the case of *Gibson* v.
*State,* 38 Miss. 313, was a case involving civil litiga-
tion where the offending party was dead and the litiga-
tion was between equally innocent parties over property
rights pure and simple.   The case of *Gibson* v. *State*
has no analogy to the case now on trial, except that
Gibson was prosecuted for bigamy; but the question in
the case was not at all similar to the question in this
case.   We will discuss the Gibson case later.

When the fact of whether or not a man or woman is
a bigamist is incidentally involved in the pursuit of
property rights by different persons claiming matri-
monial relations with him or her, the guilty person be-
ing dead and having nothing at stake, the law is that the
person who seeks to profit by proof of the unlawful
relation must establish it by the clearest proof.   Such
person, in this character of litigation, cannot establish
the bigamous marriage by mere proof of a valid first
marriage with the first husband or wife living at the
date of the second marriage.   Such facts must be fol-
lowed by satisfactory and convincing proof that there
had been no divorce from the first marriage before the
second was contracted, or the law steps in and presumes
the validity of the second marriage.   But when the man
or woman is before the court on a direct charge of big-
amy, when the proof of bigamy is not merely incidental
to the accomplishment of some other desired end, the
same proof which the law allows to stand as a shield
to protect and save innocence is allowed to condemn
and punish the guilty.   This rule of law has its foun-
dation in charity, that virtue which is pronounced by
the Good Book to be the best of all virtues.   The foun-

dation of this rule of the law grows out of the fact that it has greater regard for name and character than it has for mere property rights.

To illustrate what we mean by this, let us suppose a case. Let us suppose that Mr. Bennett had married, as he did marry, Miss Ella M. Gilman in Columbia, S. C., and had lived with her, as he did, from September, 1890, to October, 1899, and that there were born to them four children, two boys and two girls, as this record shows; that in October, 1899, he had left the above wife, and come into Mississippi, and married a second time, and had children by the second marriage, and, instead of being arrested and charged with bigamy, he had died leaving a large estate. Let us suppose that this contest was between these two sets of children, or alleged wives, as to which should receive or be lawfully entitled to the property, and all the proof offered by the South Carolina wife was the fact of the prior marriage, that she was alive, and that there was a second marriage twelve years later, and children. This proof would not be sufficient for the court to award the property to the first wife, as the question of the bigamous marriage is only an incident connected with an effort to accomplish another purpose. The same proof would warrant a conviction on a direct charge against the offending party of bigamy. The reason for this difference in the probative force of the proof offered in each case grows out of the difference in the way it arises, and the thing sought to be accomplished by it, and the results that are to flow from it. In a controversy over property rights by equally innocent parties, if the second marriage of the dead offender is to be invalidated and held to be bigamous, the wife has been but a wife in name, the offender cannot be punished by the proceeding, and the children are to be bastardized and turned nameless into the world, subject to the scoff and scorn of an uncharitable world. When consequences so disas-

trous as these are to be visited upon innocent heads, merely that some equally innocent party may add to their worldly goods, the law, that is more tender, humane, and just than mankind, whom it serves, declares that its mighty powers cannot be used in such a case, except where the proof is made clear by those who would bring about this disaster. The law then follows the right, no matter where it leads, or what the consequence.

But the reason for this rule of law does not apply to the guilty party, where he stands before the court on a charge of bigamy, and the law seeks to have him punished for the reprehensible crime he has committed. The reason of the law ceasing, the law itself ceases. With what justice can the guilty party ask that this rule of the law, that has its application only to innocence, that designs only to protect innocence, shall be used as a guard to protect him in his guilt? The very thought shows the fallacy of the undertaking. Who knows better than the guilty party where the evidence is that will show his innocence? This very case is the best possible illustration of the monstrosity and absurdity of the claim. The appellant stands charged with bigamy. The proof shows his marriage in 1890 with Miss Ella M. Gilman. There are four children of that marriage. A second marriage is shown to Miss Alice Woodworth, in March, 1911, while the first wife was living. Appellant pleads not guilty, and, in the face of this proof, chooses to rest his case on what he claims is presumptive proof of "law innocence," and as a result is convicted and sentenced to the penitentiary for ten years. Who was better able to show where proof of his innocence lay, if such proof was in existence? He had wandered from South Carolina to this state, and for the state to assume the burden of showing that a divorce had not been granted would have required an examination of every record of divorce in every county into

which appellant had gone for the last twelve years. The state could never convict of bigamy, if such was the law, unless it kept a corps of detectives ceaselessly on the track of every man and woman in the commonwealth. The state requires the alleged bigamist to make the proof, because only he can make it, and, if it exists, he will make it, to save both his good name and a penitentiary sentence. If the appellant had the proof, it was his duty under the law to produce it. It was his duty to himself. It was his duty to his first wife and children. It was his duty to the last innocent young woman whom he had so grievously injured. Appellant could not have expected this self-respecting young woman to continue to live with him, if he remained dumb and rested his case on "law innocence," raised by this presumption to which he erroneously appeals. All these things merely illustrate the fact that the reason of the law has no application to this state of case.

We now turn to the cases cited from our own court. The first is the case of *Gibson* v. *State,* 38 Miss. 313. Gibson was indicted for bigamy in Warren county. The facts were that in 1855 he married one Maria A. Williams. Two years afterwards, in 1857, and while his first wife was living, he married Ann Cochran. Subsequently he was indicted for bigamy. It appears that Maria Williams had married in 1849 one E. H. Williams, and that a few months after their marriage Maria's husband went away, and had been absent and unheard of for more than five years at the date that Maria married Gibson. A statute of the state, at that time, made the absence of a husband or wife for five years, and unheard of, a legal presumption of death. Gibson was prosecuted and convicted of bigamy after his second marriage with Ann Cochran in 1857, and made the contention that the legal presumption of the death of Maria Williams' husband, raised by the statute, could not be invoked against him when on trial for bigamy; his

contention being that his marriage to Maria was a void marriage, because she was married at the time, and the statutory presumption could not be used against him. This court held differently, and sustained the conviction. This case is authority for the fact that the court has recognized presumptions in bigamy cases and has sustained a conviction on same.

The other cases cited by counsel for appellant are *Hull* v. *Rawls,* 27 Miss. 471; *Spears* v. *Burton,* 31 Miss. 554; *Wilkie* v. *Collins,* 48 Miss. 496; *Railway* v. *Beardsley,* 79 Miss. 417, 30 South. 660, and *K. of P.* v. *Tucker,* 92 Miss. 505, 46 South. 51. All of the above cases involved a civil litigation between innocent parties; the wrongdoer himself having no sort of interest involved. The above cases were decided as they should have been in each instance, and the rule of law announced by them is not interfered with by the holding of the court in this case, and is not intended to be. We will analyze the above cases. In the case of *Hull* v. *Rawls,* 27 Miss. 471, it appears that one Margaret Rawls was married to James C. Rawls in December, 1848. Subsequently James C. Rawls died, and an administrator of his estate was appointed. The alleged wife filed a petition to have her dower in the estate set aside. The administrator denied the validity of the marriage, and undertook to prove that J. C. Rawls had stated in his lifetime that he had another wife living in Georgia. The court in the above case said: ''The marriage having been solemnized according to the forms of law, every presumption must be indulged in favor of its validity. The statement of Rawls, while it could have been used as evidence against him in a proceeding in which he was directly interested or could be affected, cannot be used to the prejudice of the petitioner.'' In the case of *Spears* v. *Burton,* 31 Miss. 554, the facts are about the same. In 1834 Abner P. Burton married a Mrs. Bayard, and they had one child. It also appears that Mrs. Bayard mar-

ried her first husband prior to 1829, but that during that year Bayard left her, and was never afterwards heard of. Those who would have been the heirs of Burton, if his marriage with Mrs. Bayard was invalid, and the son of this marriage, became involved in a litigation over the property, both father and mother being dead, and the court held that under the facts the validity of the marriage would be presumed. The cases of *Wilkie* v. *Collins,* 48 Miss. 496; *Railway* v. *Beardsley,* 79 Miss. 417, 30 South. 660, and *K. of P.* v. *Tucker,* 92 Miss. 505, 46 South. 51, involve the same principles, and are dealing with the rights and character of innocent third parties, where the guilty one has passed on to be tried by a higher court than this, and where the rules of this court cannot reach.

Since the rule of law is a rule for the protection of innocence, where the guilty party has no interest involved and is beyond the reach of human laws, it can have no application to him when he is before the court with an interest, and when the state is undertaking to bring him to punishment for the outrage he has committed against society and the law of the land. The case of *Sullivan* v. *Grand Lodge of K. of P.,* 52 South. 361, is a case involving the same principles as the other civil cases above referred to.

This suggestion of error is overruled.     *Overruled.*